Avert, J.
We shall assume it to be a fact in the case, that the land which had been given to the complainant, was sold by his father to a third person, before the date of the will. This is probably in accordance with the true state of facts, but Avhether so or not, the bill does not give the time of the date, nor show by necessary averments, that the land belonged to the complainant when the will was executed. No argument, therefore, which might be drawn from a different state of facts, can be made applicable to the question arising upon the demurrer. That question is, whether the bill makes a case for relief in equity. The complainant has given a statement in detail of facts, circumstances and declarations of the testator, which, as he supposes, taken altogether, and in connection with the will, furnish a sufficient ground for relief. He alleges that his father had given him a tract of land, which he afterwards took back, and sold to another person, promising that he would give to *261 the complainant an equal share of his property; that he would give him a deed for another quarter section of land, or the value of it in money; but, the complainant says, instead of fufilling his promises, he executed a will, in which he erroneously charged the complainant with $1,200 as previously received, and died without correcting the error. If there is any truth in the insinuation contained in the bill, that the testator made the charge of $1,200 because at the time he had become vexed at the complainant, the intention and design to cut him off to that extent would appear to be established ; and in that case, though the motive which actuated the testator might not be approved, still his purpose, if he had the requisite capacity for making a will, could not be defeated by the court, consistently with any known rule of the law. So if from derangement, or such a disordered state of mind, as is suggested in another part of the bill, the testator, at the time of executing his will, could imagine that he had given complainant the $1200, when there was not the least foundation, in fact, for such a conceit, there might doubtless have been found a remedy for the complainant, if he had made his application in time and in a proper manner; but it would be through a mode of proceeding different from that adopted in the present case. But further, it is insisted that in making this charge, there was a mistake of the testator, in consequence of which the complainant is unjustly subjected to a loss, to the amount of that charge, and that a court of equity has power to correct the alleged mistake.
Can any inference in support of such mistake be drawn from the whole of the transaction respecting the land, as set forth in the bill ? It is alleged indeed that the testator, at a former period, had given to the complainant a tract of land ; but though he was owner, of this when executing his will, he knew also that no writings had been drawn ; that no title had ever passed by the gift; that he had reserved the control over the land, and claiming to be himself the owner, had sold and conveyed it to another person. He knew that his son had received no benefit from the land, and therefore that he ought not to be charged in *262 the will with the price of it. In the opinion of the court, the charge is not shown to have any connection with a previous advancement of land, and receives no explanation from the circumstances of the transaction as they are stated.
But it is urged in argument on behalf of the complainant, that the charge was made in view of a contemplated and promised advancement by the testator. In considering this argument it will be necessary to inquire from what sources evidence may legitimately be drawn to prove the intention and purpose of the testator at the time of making the charge. If from the will alone, the evidence will be found upon inspection to be exceedingly limited. The charge complained of is in these words, “ Item 4th. My son Andrew Painter has received heretofore out of my estate the sum'of twelve hundred dollars, which stands in part of his portion.” There is nothing in the will alluding to the manner in which the sum had been received, nor an intimation of any purposed advancement; all that is found is the bare statement of the fact, in the above words copied from the will. Now how is this statement, which in clear language is retrospective, taking notice of the sum as received heretofore, to become prospective and to mean an advancement hereafter to be made ? This it will be seen also is a statement by the testator of a fact, not derived from information .communicated to him by others, but if true, within his own knowledge. May such a statement of a testator, who has power- according to our law to distribute his property as he will amongst his children, be contradicted, and declared to be untrue ? But if this may be done, and other parts of the will be examined for that purpose, no contradiction will be discerned. All the aid to be derived from other parts of the will to control or affect the statement, is found in the intention of the testator upon different occasions expressed in the will, to make all his children equal. But the charge is made while he is making a distribution of his estate which he intends shall be equal. It is to be presumed, then, taking the will alone as the guide, that he considered the charge necessary in order to make the distribution equal.
*263 But showing no explanation of "the charge in the will itself, is the complainant at liberty to resort to other evidence to prove what was the intention of the testator, and what were the real facts in the case ? what statements he made at the time of executing his will, and before and after ? such for instance, as that he never actually gave his son anything; that when he made the charge he intended to advance the amount of it in his lifetime; that unless this should be done his estate would not be divided equally, and in such case he would make another will; that he intended to divide his estate equally amongst his children, etc. No doubt, by refusing such evidence it may Sometimes happen that the real intention of the testator will fail of being accomplished; and perhaps it may be so in the present case. But, whatever may sometimes be the consequence of excluding the evidence, is such proof admissible under the law? We decide that it is not. A will must be executed agreeably to the forms prescribed in our statute, or it can have no power to pass the title to property real or personal; it will be entirely void. The statute, after giving the power to execute the will, provides also several modes of revoking it. It may be revoked altogether, or in certain particulars altered by another will or codicil, or by another instrument of writing, but before either one of these can have any effect upon a will, it must be itself executed with all the formalities required in the case of a valid will. The testator may undertake by a writing, which clearly expresses his intention, to explain some statements in his will, or to alter some of its provisipns; but unless two witnesses have put their names upon the writing, and it is otherwise executed like a will, it cannot be received in evidence. Is it to be supposed then, that loose declarations, or even clearly expressed wishes of a testator, not signified in the manner pointed out, can be received in evidence, and be held sufficient to revoke a will, or to control its provisions ?
“As the law requires wills to be in writing, it cannot permit parol evidence to be adduced, either to contradict, add to or explain the contents of such wills; no principle connected with *264 the law of wills is more firmly established or familiar in its application than this.” 2 Jarman on Wills 848, 349.
The counsel for the complainant has cited two cases from the 5-Watts. The first is Musselman’s Estate, 9. The testator had seven children, and the will contained this expression : “ I have kept a book account of advancements made by me to my children respectively, to which reference must be had in making the following division, and so much as shall at my death stand charged against either of my children, shall be taken as part of the share allotted to such child ; each child shall receive from the estate as much as will make him equal with that one of the seven who has received most.” In the book of accounts referred to in the will was found a list of charges against the different children. One of them had settled with the father and repaid all the advancements up to a certain date, but the items were not erased from the list. The court decided that the words “ so much as at my death shall stand charged,” were not intended to give effect to an unfounded charge that ■would defeat his proclaimed intent. The court add: “ he might doubtless have peremptorily directed the book, in whatever condition found at his death, to be taken for conclusive proof of the state of the accounts; but he has not done so.” This case, as we view it, is an authority against the present complainant. The court, from a construction of the will alone, declare that it was not the intention of the testator to make the book conclusive proof. If his language had shown that he intended it to be conclusive, the court would have held it to be so. In the case under consideration, there is no uncertainty in the expressions, nor any doubt of the intention as appearing upon the face of the will.
The other case in Watts, page 80, Hoak v. Hoak, related also to advancements made and entered on book against the testator’s several children. The court in this case also, as in the former, gave a construction to the language of the will, and by that construction determined what was the intention of the testator. It was from the words of the will determined that *265 the book was not meant to be conclusive. Neither of these cases is authority for allowing parol proof to contradict or explain the words of a will.
In the construction of wills, the great object is always to ascertain the intention of the testator. That intention is made known by language. It may be awkward, obscure and ungrammatical, but it must be language ; and one of the important rules for the construction of wills is, that its language must be interpreted according to its proper acceptation. In accordance with this rule was the determination in 8 Watts 240, where two rooms of a house had been devised to a woman for life, with the privilege of selecting the two which should best suit her. The house was a three stoi-y brick building, situated in a business place, upon Market Square, in Pittsburgh. The testator expressed in the will his intention to be, that she should have a shelter or home during her life. She selected the two rooms in the lower story, which were nearly equal in value to all the rest of the house ; one of the rooms was occupied as an office before and after the death of the testator. Yet as the words of the will would embrace these rooms, the claim of the devisee, according to the selection she had made, was sustained.
But though the intention of a testator is to be ascertained by the expressions he uses, it is not denied, that parol testimony is admissible in questions arising in reference to the disposition of the estate. It is admissible to explain a latent ambiguity. Where extrinsic evidence creates the difficulty, it must be admissible for the purpose of explaining or in removing it. The situation of the testator in regard to his property, his declarations, the situation and circumstances of the property, and the relation of the persons named in the will, may all, it is conceded, be the subjects of proof upon the trial, but not for the purpose of altering or in any way changing the will itself.
The testimony on file in this case has not been looked into *266 by the court. The cause is decided upon the demurrer alone; and it determines, that nothing as set forth in the bill, by the testator said, done, or omitted, at the time of executing his will or at any time afterwards, can alter, contradict, or control the words used by him in the will itself.
The bill is dismissed.