## DIME SAVINGS INSTITUTION v. MAYOR AND COUNCIL OF THE CITY OF HOBOKEN.

1. An "improvement certificate" of the city of Hoboken provided that
   the city should make and collect an assessment for the improvement
   with due diligence, and that in case the assessment should not be col-
   lected to meet the certificate within two years from the date of con-
   firmation, the city would pay the amount of the certificate upon thirty
   days' notice of default in the collection of the assessment. *Held*—
   1. That the confirmation of an *illegal* assessment would fix the date
   from which the two years would run.
   2. That though the assessment was set aside on *certiorari*, before it
   could be collected and within the two years, still the date would remain
   fixed.
   3. That the *default* of which thirty days' notice was required, was the
   mere non-collection for two years.
   4. That the duty to pay out of general funds arose if the assessment
   legally levied was inadequate to meet the certificate.
2. That a plea is argumentative and has an improper conclusion is not
   ground for general demurrer, but is ground for striking out the plea.
3. If persons seeking a contract to grade a street combine with the city
   surveyor to deceive the city as to the amount of filling required, and

as to the lowness of their bid compared with others, and by false profiles and estimates induce the belief on the part of the city that the work, if done by them, will cost no more than the improvement is worth, and so secure the contract at rates which make its cost exceed its value, this constitutes fraud in the consideration, and may be set up by the city to defeat a recovery for more than the value of the improvement.

4. If, in such a case, the city did not discover the fraud till the work was completed, and improvement certificates had been issued as the work progressed, the sum truly due under the contract will be divided proportionally among the certificates, and a recovery to that extent may be had on each.

On demurrer and on motion to strike out pleas.    The facts fully appear in the opinion.

Argued at February Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL and DIXON.

For the plaintiff, *T. N. McCarter*.

For the defendant, *Robert Gilchrist*.

The opinion of the court was delivered by

DIXON, J.    The declaration in this case is founded upon numerous improvement certificates, alike in form, of one of which the following is a copy:

CORPORATION OF THE CITY OF HOBOKEN.

*No.* 154.        *Improvement Certificate.*        $5000.

This certificate entitles John McDermott, or the holder, to receive of the treasurer of the city of Hoboken five thousand dollars for work and materials furnished on Eighth street improvements from Willow street to the hill, with interest thereon at the rate of seven per cent. per annum, computed from thirty days after confirmation, in such amounts as the money on the said assessment shall come to the hands of the treasurer.    And this certificate shall be receivable by the col-

lector of assessments in payment for the assessment upon which it is drawn, and shall be transferable by endorsement.

And the mayor and council of the city of Hoboken do hereby bind themselves and their successors to use due diligence in making and ——— collecting the said assessment. ——— And in case the said assessment is not collected to meet this certificate within two years from the date of the confirmation of the assessment for said improvements, that they will pay the said sum of five thousand dollars, with interest as above stated, to the holder, upon thirty days' notice of default in the collection of the assessment.

Witness the corporate seal of said city hereto affixed, duly attested this ninth day of August, in the year of our Lord one thousand eight hundred and seventy-one.

[L. S.]                                          F. L. SCHMERSAHL,
    Attest—                                                  *Mayor.*
FREDERICK E. ROWALD,
            *City Clerk.*
[Endorsed—JOHN MCDERMOTT.]

Assessment confirmed by the council January 9th, 1872, and resolution of confirmation approved January 10th, 1872.

                                       F. E. ROWALD,
                                               *City Clerk.*

The action is debt, and is brought solely to enforce the duty of payment in case of the non-collection of the assessment within two years after confirmation. Many pleas are interposed, to some of which the plaintiff demurs, and others it moves to strike out. The demurrers and the motion are presented together for decision.

Before proceeding to determine the result to be reached concerning these pleas, it seems most convenient to settle the meaning of the obligation upon which the right of action is placed, in respect to the disputed points.

The first question to be considered is whether the confirmation of assessment, mentioned as fixing the beginning of the

term of two years, at the end of which the city promises payment, is the confirmation by the mayor and council of any actual assessment, or only that of a legal assessment.

The former idea is that deducible from the construction of this certificate. There is nothing in the language used which requires that the assessment should be one unimpeachable in law. Absolute legality is by no means essential to the existence of an assessment. An adjudication, although voidable by direct proceeding, might still, until so avoided, subsist as a lien upon lands, binding them to the payment of their adjudged share of the sum to be raised. Such a charge would, with entire propriety, be styled an assessment. If, therefore, we are to confine this certificate to a perfectly lawful distribution of the burdens upon the lands benefited, we will be restricting the general term "assessment" to a special class embraced within it, for the purpose of lessening the obligation of the grantor. That would be a violation of the maxim, "*verba chartarum fortius accipiuntur contra proferentem*," a rule said to apply most reasonably to a deed-poll, which is the sort of instrument now under consideration. It is true that the certificate discloses the desire of the municipality to collect the assessment before it shall be called on for payment of this debt, and an illegal assessment may not be collectible; but the contract clearly defines the opportunity which the corporation has reserved for accomplishing this desire, and expressly negatives the idea that actual collection is a condition precedent to the duty of payment. Hence, there is no reason for inferring that absolute collectibility was such a condition.

But, further, the whole power of assessment was, by the charter of the city, lodged in the municipality and its agents. *Pamph. L.* 1855, *p.* 448, §§ 34, 52; *Pamph. L.* 1870, *p.* 277, § 6. Under these provisions, the legislative body of the city had complete authority to see that every legal requirement had been met before the resolution of confirmation was passed. If it failed to exercise this function, that was a default of the corporation. The holders of these certificates

had no control over the matter. In such circumstances, it would be a harsh construction to hold that the instrument placed the risks of illegality upon the holders, and not upon the city. It would be enabling the latter to take advantage of its own wrong. It may, indeed, be very properly argued that, so far as the illegality could be shown to have resulted from want of due diligence on the part of the corporation, in making the assessment, a right of action therefor would accrue to the holders, upon the express covenant for the exercise of such diligence; but the contract goes further than this, and its fair import is that the holder shall be relieved from all inquiry into the vague subject of negligence and consequent damages, provided he will wait until an assessment has been confirmed, and two years have thereafter elapsed.

Another question raised is whether the fact that the assessment was set aside by this court, before it could be collected, and within two years after its confirmation, does not save the city from the consequences which are expressed as to follow upon non-collection. The principle here invoked is that when the performance of a covenant is prevented by act of the law, the obligation to perform is released or suspended, without harm to the covenantor. This doctrine was so fully discussed in *Hillyard* v. *Mutual Benefit Life Insurance Co.*, 6 *Vroom* 415; *S. C.*, 8 *Vroom* 444, that it is not necessary to go further than those decisions for the true boundaries of the rule. Said Chief Justice Beasley, 6 *Vroom* 418: "The exact performance of the contract, on the part of the assured, has been rendered impossible by the act of the law, and, as such an occurrence was not a contingency which can reasonably be supposed to have been within the contemplation of the contracting parties, at the time they bargained, I think this failure in a strict compliance, is not a legal breach of the agreement. The reasonable and true doctrine seems to be that express terms are necessary to create an obligation which will include a liability in case of an unanticipated prevention by the act of God, or of the law, of a fulfilment of a stipulation. In the absence of such an expressed intention, there is

always an implied understanding that the doing of the act agreed to be done shall not become absolutely impracticable, from a remote and unexpected event, occasioned by a natural or legal agency." Herein it is clearly stated that the excusing fact must have been one beyond reasonable prevision, or manifestly not provided for in the contract. Such are war and legislative enactments, occurring after the making of the covenant, and rendering its performance illegal, and the death or disease of one whose personal service or attendance is requisite. But it is nowhere alleged in these pleadings that any change in the law arose, by which the power of the municipality to make, maintain, and collect the assessment in question, was impaired; and it must therefore be assumed that no such change took place. The charter confers upon the city power to make a valid assessment, and consequently the judgment of reversal pronounced by this court must have been rendered because of some failure of the municipal officers to properly use their authority or to preserve due record of their proceedings. It plainly was within the contemplation of the parties, that contingencies of this character were not to relieve the covenantor. The due course of existing laws is always regarded as a thing foreseen in bargains. We have already endeavored to show that the assessment mentioned in this contract was one which might be illegal; and in that event, it was a matter of probable consequence that it should be assailed and annulled. Against these very risks, doubtless, this agreement to pay from the general treasury, in case of non-collection, was provided.

The defendant also insists that, in the covenant now under discussion, the terms making the money payable only on *notice of default* in the collection of the assessment, indicates that the city must have been guilty of some laches in that respect, and that, at most, non-collection for two years is only evidence of laches, and leaves the fact of negligence open to be rebutted by pleading and proof. This interpretation is not sound. "Default" does not necessarily imply culpability; it as often signifies only failure; and, in the absence of any

other ground for determining its meaning, in this covenant, the rule already adverted to, that it should be construed least favorably to the party using it, would lead us to the latter sense. But the same intention is indicated by a totally impartial reading of the covenant. The whole sentence contains two principal clauses; the first requires the use of due diligence in making and collecting the assessment. This is complete in itself. No subsequent words at all modify it. The duty it imposes can be broken only by culpability; but culpability is a perfect breach; no notice or other circumstance is requisite. The second clause enjoins the payment of the money, in case of non-collection of the assessment, upon notice of default. This clause is likewise capable of being regarded as complete. All its terms may have relation to one another, and the purpose it is designed to express may thus be kept independent of everything extrinsic. The default to be notified may be the mere failure to collect. In this condition of things, it is not reasonable to stray outside of the covenant to get at the purport of its terms. Naturally, a notice by which the obligation to pay was to become perfect, would have reference to some substantial fact out of which the obligation springs; and in this clause, that fact is the non-collection of the assessment for two years. As between the parties, such non-collection is a default of the city which had assumed to collect, and it would be a strain upon the proper relation between these members of one covenant, if we should seek for some other default to be made the subject of the notice required. Moreover, if the construction urged by the defendant be correct, then non-collection for two years, by reason of negligence in collecting, would create the duty to pay under this clause; but such non-collection arising from negligence in making the assessment, would not have that effect. Nothing else in the instrument suggests such a distinction, and it does not seem to be a probable one.

The next proposition of the defendant is that, in this covenant to pay, the amount specified is to be considered as a penalty. The argument presented is as follows (the extrinsic

facts which it assumes being alleged in the pleas): The contract for the work provided that, in payment, the contractor should receive only improvement certificates. Under it there were issued to him certificates amounting to $118,000, of which those in suit are part. According to these certificates, if the city had used due diligence in making and collecting the assessment upon property owners for this improvement, and had collected it within two years after confirmation, and the receipts therefrom had been paid over to the holders of the certificates in such sums as the money on the assessment had come into the hands of the city treasurer, then the whole duty of the city, under these obligations, would have been performed. The assessment on the property benefited could not, constitutionally, exceed the benefits conferred; and for this improvement, those benefits aggregate, according to a valid assessment already made, only $48,000. If, therefore, the city had performed its whole duty, a fund of but $48,000 would have been provided to pay $118,000. Such a fund must have been distributed ratably among the holders of the certificates, and consequently the plaintiff, on a certificate of $5000, for example, would have received only $2033.90. The covenant must, therefore, be regarded as one to pay to plaintiff $5000, in case of failure to collect and pay over to it $2033.90. In such a covenant, the $5000 is a penalty.

There appears but one fault in the course of this reasoning. That fault, however, is fundamental. According to the true construction of these obligations, the city's whole duty was not performed by duly paying over the amount of the assessment, if thereby the amount of the certificates was not fully realized. The city, in effect, guaranteed that an assessment, legally levied, would pay the principal and interest named in these bonds. So much was to be paid, whether the assessment was adequate or not. This conclusion is inferable from various circumstances.

*First.* The certificate declares the holder entitled to receive from the city treasurer a designated sum, without an intimation that only a ratable proportion may, in any event, be due.

*Second.* Through the design or neglect of the city, no assessment might ever be made; and then, if the sum named be not the sum due, no practicable rule for the computation of the holder's damages, on such non-feasance, could be adopted. It would be necessary to submit to each jury before whom a suit upon any bond might come to trial, the question of the amount of benefits received by the land improved, to the end that the proper percentage of allowance to the bond in suit, might be determined. Certainly it could not have been within the contemplation of the parties, that they were issuing and accepting obligations of such indefinite and varying proportions, or, at least, a contract of that character ought to be clearly expressed, and is not to be inferred from language capable of more certain signification.

*Third.* The promise to pay the full sum of principal and interest is based upon the non-collection of an assessment " to meet the certificate." Mere collection is not all that is bargained for, but *collection to meet this certificate.* This imports that the assessment shall be adequate for that purpose.

*Fourth.* Upon examination of the contract under which these certificates were issued, the same conclusion is indicated. The contractor agrees to receive as full compensation for his work, certain designated prices, which are stated in dollars and cents, and the city agrees to pay those prices, and the issuing of these certificates, in sums of not less than $500, as the work progresses, is fixed upon as only the manner of making payment of the price. It nowhere is suggested that the price is dependent upon the amount of special benefit which lot owners may derive from the work, and it is not to be believed that the parties regarded that as a possible criterion. The city charter requires such contracts to be given out to the lowest bidder. It is manifest that no rational bid could be made, if it was to be subject to variation according to a quantity unknown and unknowable.

But it is urged that in such works, the city was only the agent of the owners of the property which was to be benefited, that this idea had been frequently asserted in our courts,

so that the contractor and those dealing in these certificates must have been familiar with it, and must have looked upon the corporation as merely the medium between these owners and the contractor as employers and employé, and as bound only to the extent of collecting what these employers were liable to pay. In Hoboken, however, the charter plainly does not place the city in this intermediary position. It empowers the corporation not only to improve streets (§ 40, ¶ 6,) and to make contracts therefor (§ 57), but also to raise, by general tax, the money needed for all the purposes authorized by the charter (§ 43), while the special assessments for improvements were to be levied only after the improvements were completed (§ 52), thus indicating that the legislative design was to make the authority to improve streets and contract obligations therefor, independent of the right of special assessment, which was to be a mere means of reimbursement to the municipality. *Village of Passaic* v. *State, D., L. & W. R. R. Co., pros.*, 8 *Vroom* 526; *State* v. *Elizabeth*, 11 *Vroom* 278.

It was certainly common enough to speak of municipal authorities as agents of the land owners, in making these local improvements, while we recognized the legality of imposing upon these owners the whole cost of improvements, without regard to benefits; and where this doctrine obtains, there is some propriety in such designation. *Eno* v. *Mayor, &c., of New York*, 68 *N. Y.* 214. But since we have settled upon the just principle that private persons can be burdened for such works only so far as they are peculiarily benefited by them, and all the expense not thus met must fall upon the public, so that now they constitute the body mainly interested in the judicious and economical construction of these improvements, it is difficult to see on what fact this notion of agency can longer be based. The land owners neither select nor can remove these so-called agents; they neither confer nor can abridge their powers; they are neither harmed by their faults nor profited by their virtues, save as are other members of the community, for in their special character, they

but give *quid pro quo*. To designate such a relation as that of agency seems to be a misapplication, or, at least, an unusual application of terms. It comports much more closely with the truth, to regard the municipality as a public agent, exercising public powers, for public purposes, and at public expense, and, for the requisite means, wielding the sovereign right of taxation, by special assessment, where special benefits are conferred, and by general levy as to the residue. No safe deduction can, I think, be drawn from the hypothesis that the city was the agent of the land owners.

Under the guidance then, mainly, of these views as to the true construction of the certificates, we may now proceed to dispose of the pleadings.

The declaration which, on the plaintiff's demurrer, the defendant impugns, sets out a legal cause of action.

The third, fourth and fifth pleas correspond with the ninth, tenth and eleventh pleas in *Knapp* v. *Hoboken*, 10 *Vroom* 394, and on the authority of that case, will be allowed to stand.

The sixth, seventh, eighth, ninth, fifteenth, sixteenth and seventeenth pleas are all based upon the idea that the reversal of the assessment on *certiorari* relieved the city of its duty to pay in case of non-collection within two years after confirmation. They are all demurred to except the sixth and eighth, which the plaintiff moves to strike out. The demurrer must be sustained, and although in *Knapp* v. *Hoboken, ubi supra*, the court refused to strike out pleas similar to these, holding that their validity should be tested by demurrer, yet now, this judgment on demurrer being rendered, the sixth and eighth pleas may be struck out.

The tenth and eleventh pleas set up in defence the construction of these certificates, which restricts the liability of the city to such proportion of them as a constitutional assessment bears to the sum of all the certificates issued. The demurrers to these pleas must be sustained.

The twelfth, thirteenth, fourteenth and fifteenth pleas are to the effect that, at the time the notice of default in col-

lection of the assessment, and in payment of the money on the certificates, was given, no default had been made. These pleas have two defects. First—the only fact which they can be regarded as denying, is the fact averred in the declaration, that when the notice was given, two years had elapsed since the date of confirmation; and this fact they deny merely by inference; hence, they are argumentative. Secondly—their only office being the denial of a fact alleged by the plaintiff, they should conclude to the country, and not as they do, with a verification. 1 *Chitty on Pl.* 539, 556.

But neither of these objections can be raised on general demurrer. *Steele* v. *Southwick*, 9 *Johns.* 314; *Roberts* v. *Mariett*, 2 *Saund.* 188, *note* 5.

The demurrer to the thirteenth plea will therefore be overruled, but the twelfth and fourteenth pleas may be struck out, according to the plaintiff's motion. *Copperthwait* v. *Dummer*, 3 *Harr.* 258.

The eighteenth plea sets up a defence which does not involve the construction of the certificates, and it has therefore been reserved for separate consideration.

It avers that before the making of the contract for the improvement on which these certificates were issued, the contractors, the city surveyor, and others, conspired together to falsely represent to the city that the improvement to be made would cost no more than the amount of special benefit which could be derived from it by the circumjacent land, and that the bids which these contractors were about to offer were the lowest bids for the work; that in furtherance of this scheme, the surveyor prepared and sent in to the council false profiles and quantitative estimates, tested by which, a lower cost would be figured out upon these bids than upon any bids which a man not cognizant of the device could honestly offer, and the whole expense would appear to be about one-third of the actual cost at the prices proposed; that, deceived by these fraudulent practices, the city made the contracts, and carried on the improvements to completion, and it did not discover the fraud until all the certificates were issued: that the per-

formance of the work has conferred upon the city no greater benefit than the amounts for which private land is specially assessable, which somewhat exceed the original estimates of the surveyor; that these amounts should be distributed *pro rata* among the certificates issued on each improvement; that to this extent, the city has no defence, but to the residue of the plaintiff's claim, the foregoing facts are sufficient answer, and are accordingly thus pleaded.

This plea is demurred to, and in support of the demurrer several positions are taken.

1. Such a plea is said to have been condemned in *Knapp* v. *Hoboken,* 10 *Vroom* 394. But an examination of that case shows that the plea there repudiated was pleaded in total bar of the action, and the reason for its rejection was that it set up as a defence to the whole what answered only part. The present plea escapes this objection, and in this respect is justified by the decision in *Flemming* v. *Hoboken,* 11 *Vroom* 271.

2. The fraud is said to be not in the consideration, but in the inducement only. The distinction made is that the work to be done formed the consideration, while the fraud had reference simply to the source whence the city could derive the funds for payment. But this seems to me to be confining the fraud to too narrow a sphere. The improvement mainly consisted of filling in a street across meadows. When made, it would be no more valuable to private owners and the public, if sixty thousand cubic yards of earth had been required to bring the street to grade, than if twenty thousand had sufficed. In the latter case, it might be worth doing; in the former, not. The effect of the alleged false representations was to induce the belief by the city, that if the work were done on the terms proposed by these contractors, the value received would equal the value paid. These two values are the considerations of the contract. Fraud as to either of them is equally injurious. It can make no difference, in substance, whether the fraud be perpetrated by exaggerating the value to be received, or by underrating the value to be paid. In the present case, the city could not easily be de-

ceived as to the worth of the improvement, for the character of that was well understood; but it was quite open to deception, through the treachery of its surveyor, as to the amount it was agreeing to pay. Fraud, in either particular, may, with perfect propriety, be called fraud in the consideration, and should be pleadable as a bar against every attempt to make the fraud fruitful to the fraud-doer. This objection is not valid.

3. It is urged that courts cannot inquire into the motives which lead legislative bodies to act, with a view to disturb their action; and on this ground, it is said, we may not take notice of the fraud by which the city council was induced to make this contract. The cases cited in support of this contention all relate to the acts of state legislatures, which are co-ordinate with the judiciary in the government of the commonwealth, and whose transactions are therefore said to be unimpeachable in the courts, save for unconstitutionality. This reason would not cover the doings of municipal councils, whose conduct is generally held to be subject to judicial review. In *State* v. *Cincinnati Gaslight Co.*, 18 *Ohio St.* 262, an ordinance of the council of Cincinnati, fixing the price to be charged for gas by the gas company, was held to be invalid because its passage had been corruptly secured. In *State* v. *Jersey City*, 5 *Vroom* 390, a resolution of the board of aldermen, for the purchase of lands, and a contract made in pursuance of it, were adjudged bad and set aside, because two of the aldermen were interested, in violation of the charter. Many other instances might be adduced, in which municipal ordinances, not purely legislative, have been successfully impugned on similar grounds. No reason is suggested or appears, why public corporations have not the same right to be protected against fraud in their contracts, as have private individuals.

The last question presented is as to the effect of the alleged fraud upon the several certificates. The plea is framed on the idea that the whole sum due under the contract must be distributed *pro rata* among the holders of all the certificates,

without regard to the dates of their issue. This view, we think, is correct on the facts stated. Although these instruments were delivered at different times, yet each was delivered in pursuance of an obligation to deliver all. They all mature upon the same events and at the same date. They were issued as the improvement progressed, and hence each represents a proportionate part of the entire work, and all are expressly chargeable upon the fund which stands for the value of that work, at least so far as such fund is to result from special assessment. It is just that any deficiency of the fund to meet all should be visited upon each ratably. This was the rule adopted in *McPherson* v. *Foster Bros.*, 43 *Iowa* 48, where a school district, authorized to contract a debt of only $2057.50, in building a school-house, had issued bonds therefor to the amount of $15,000, which the original payees had assigned to various holders. The $2057.50 were divided proportionally.

This court has already decided that the city can set up every defence against an assignee of these obligations which was available against the assignor. *Knapp* v. *Hoboken*, 10 *Vroom* 394.

But if any preferences should be allowed among assignees, the facts out of which they might arise are not disclosed, and probably another tribunal than this must determine them.

The demurrer to this plea should be overruled.