Eollett, J.
There is no question here as to the powers of the company, which were ample; or as to the power of the village to make a contract with the company to light its streets and public places; and the plaintiff does not complain of any thing prior to March 1,1879. The plaintiff claims that by the terms of the contract of April 27, 1871, the defendant must permit its street lamps to burn plaintiff’s gas from sunset to sunrise, and must pay plaintiff for the same. The defendant claims that, under the statutes of Ohio, it may require the burning of these lamps to cease at one o’clock in the morning, and that it need not pay for the gas consumed against its wish and in violation of its ordinance.
Whatever contract the council of Avondale legally made is binding on the defendant and must be performed ; but if the council that entered into the written agreement exceeded its authority and had no power to make the con *266 tract set out, the defendant is not bound by the illegal ' terms of the same.
Whatever may have been true of municipal corporate charters in mediaeval times as to their being treaties between feudal lords and commercial communities, in this country a municipal corporation isa public corporation created by the state for political purposes, and it has subordinate and local powers, and such powers only as are expressly granted or necessarily implied.
Its legislative powers can not be delegated or bargained away. “Such corporations may make authorized contracts, but they have no power, as a party, to make contracts or' pass by-laws (ordinances) which shall cede away, control, or embarrass their legislative or governmental powers, or which shall disable them from performing their public duties.” Dill. Mun. Cor., § 97.
Of course the council of a municipal corporation has no power to bind the corporation in matters expressly prohibited by the state.
At the time this agreement was entered into, the following statutes were in force. (Rev. Stats., § 2478): “ The council of any city or incorporatéd village, in which gas companies, or gas-light and coke companies, maybe established, are hereby empowered to regulate, from time to time, the price which such gas or gas-light and coke companies may charge for gas furnished by such companies to the citizens, public grounds and buildings, streets, lanes, alleys, avenues, wharves, and landing places,” etc.
Section 2479 provides that the council and the company may fix and agree upon a price for a period not exceeding ten years and in such case the council can not require gas at a less price during that period.
Section 2485. “ It shall not be lawful for any council to agree by ordinance, contract, or otherwise, with any person or persons, for the construction or extension of gas-vmrks, for manufacturing or supplying the corporation or its inhabitants with gas, which shall give or continue to any person or persons making such agreements with the council *267 the exclusive privilege of using the streets, lanes, commons, or alleys, for the purpose of conveying gas to the corporation, or the citizens thereof, or which shall deprive the council of the right to designate the kind of meter to be used for the correct measurement of the gas furnished under such agreement, and to provide for inspecting or regulating the same, or which shall not specify the exact quality of the gas to be furnished, and reserve to the council the right to enforce an exact compliance with such specification, under such rules as the council may pz’escribe,” etc.
The contract in this ease assumes to grant to the company the exclusive privilege of extending its gas pipes and mains through the avenues, roads, streets, lanes, alleys, and public grounds of the village for the puz’pose of conveying gas to the village lamps and to its citizens; and to grant the exclusive power and authority to introduce its pipes and other apparatus for supplying gas ; and to provide that the quality of the gas fuzmished should be the same as for the city of Cincinnati (over which Avondale had no control), and that the pi’ice should be the same as in Cincinnati and under the same regulations and conditions, and those wez’e govezmed by the lowest average prices of gas paid in New Orleans, Baltimore, New York, Louisville, and Pittsburgh.
Section 2479 does not benefit the plaintiff as to price, for the eonti’act was not limited to or within ten years, or any number of years, but was to continue indefinitely, at the option of the company; and it seems clear that, if sections 2478 and 2485 apply to this case, the contract is ultra vires.
In construing statutes so as to give them the legislative intent, intez*pi’etation may expand their meanizzg beyond the literal significance of the words. In each case regard must be had to the subject and the circumstances, as well as to the words used. Reg. v. Collingwood, 12 Ad. & E. 681, 686; Miller v. Salomons, 7 Exch. 475; Bish. Stat. Cr., §§ 190, 120; Tracy v. Card, 2 Ohio St. 481, 441.
The act of March 20, 1859, which authozúzed gas companies to extend pipes for conveying gas into cities and vil *268 lages in the vicinity, was in force when, on May 7, 1869, sections 2478 and 2485 were enacted; and there is no statute prohibiting their application to companies or individuals making such extensions. Section 2485 provides that: “ It shall not be lawful for any council to agree, by ordinance, contract, or otherwise, with auy person or persons, for the . . . extension of gas-works for . . . supplying the corporation or its inhabitants with gas,” etc.
Here the word “person” includes this gas company; and, in terms, the section relates to contracts and ordinances for the extension of gas-works for supplying the village and its inhabitants with gas.
Extend means to draw forth or stretch, to prolong, especially in a single direction, as a line. Extension is the act of extending or stretching out. Gas-works are extended when the mains and pipes are prolonged into a village so as to supply the village and its inhabitants with the gas of such works.
If gas-works used only for manufacturing gas do not include the mains and pipes that convey the gas to the lamp posts and to the consumer (as perhaps they may not), gas works for supplying gas “ at the lamp posts in the village ” do include the mains and pipes through which the gas is furnished by a company that owns the whole plant, including the rights of way where the same are laid, as in this case. It is admitted that the council of the city or village, where the gas company has its whole plant established, is within the provisions of section 2478; and no principle or reason has been shown why the same provisions should not apply, and do not apply, to the council of a city or village in which the company has one-half of its plant, or any smaller part thereof, when contracting with such company to supply gas to such city or village. In each case the same principles apply, and the same rights are sought to be secured, and similar wrongs are provided against. Sections 2478 and 2485 and their pi*ovisions do apply to these parties and to this agreement. Hence we see that the council exceeded its powers in agreeing to grant to the *269 company an exclusive privilege (The State v. The C. G. L. & G. Co., 18 Ohio St. 262), and in agreeing to place beyond the control of the village the price and the quality of gas, as well as the quantity the village would require in future; and the agreement is ultra vires and void.
The company was bound to know the law and the powers of the council, and there is shown no principle or act of estoppel that prevents the village from now setting up such want of power in that former council, or that es-topped the village from disregarding, in future, and after due notice, any part or all of that contract. The council had power to pass the ordinance of Eebruary 13, 1879, specifying the quantity of gas required by the village for the street lamps.
It is admitted that the village paid for all the gas it received up to March 1, 1879, under the contract, and now the village must pay a reasonable price for the gas received and used by it under that ordinance of February 13, 1879, not because of the contract, but because the village has used the gas.
The amount of gas so used under this ordinance has been agreed upon by the parties, and its value has been fixed by them at $6,331.29. This sum we regard as correct, but it is subject to a credit of $2,000, paid December 2, 1879.
The answer avers that at all times the defendant has been ready and willing to pay for the gas furnished the village up to one o’clock in the morning, as specified in the ordinance of February 13, 1879. But that was not a tender of what was due, and did not stop or prevent interest;“ and interest should be allowed on any sum due from the time the same became due.
The plaintiff is also entitled to costs in the case (Rev. Stats., § 1319).
There was error in the judgment as to the interest and costs, and for such error the

Judgment is reversed, and the cause is remanded, with instructions.