Price, J.
We have yielded to the apparent necessity of setting forth in the statement of this case the issues made by the pleadings, believing that such statement will materially assist to an understanding of what may be said in this opinion. But as the rights, of the -parties are based on. the ordinance of June 27, 1892, .and the subsequent con *326 duct and acts of the city and the defendant, wé will not dwell upon several averments of the answer, which do not aid in determining the paramount controversy. It will promote a clear' understanding of this controversy to examine two or more sections of said ordinance.
“Section 1. Be it ordained by the city council of the city of Columbus, Ohio, that the Columbus Gas Light and Coke Company, a corporation organized under the laws of Ohio, and its successors and assigns are hereby granted the privilege and invested with the right to use the streets, alleys, avenues, lanes, commons, bridges and public grounds of-the city of Columbus for the purpose of laying and maintaining pipes to be used for carrying gas for public and private use in buildings and manufacturing establishments, and otherwise of said city, together with the right to dig and excavate in all of said streets, alleys, avenues, lanes, commons and public grounds, for the purpose of laying and maintaining pipes and other appliances required to convey said gas to consumers thereof; provided, however, that the right to purchase the works of said company and all the appurtenances belonging thereto at any time during the existence of the rights and privileges conferred by this ordinance, is hereby reserved by said city of Columbus and is hereby secured to said city by said company, its successors or assigns.”
The second section provides for the manner of conducting the work of excavating in the. streets and other public grounds, and places restrictions against interfering with water pipes, drains, sewers, or other public or private works of the city, or the gas pipes of other companies. The third *327 section required the relaying and replacing of all pavements, curbs, gutters, streets and alleys disturbed by the gas company, so as to. restore them to former condition. The fourth section binds the company to preserve and keep the city harmless from any damages or costs that may be incurred or happen to persons or property by reason or on account of anything done by the company under the provisions of the ordinance, and to defend at its own costs any suits brought against the city by persons or corporations, claiming damages on account of the erection or maintenance of the plant of' said company, etc.
The fifth sections provides:
“Section 5. The privilege conferred in section one (1) of this ordinance is granted upon the condition that the said Columbus Gas Light and Coke Company, its successors, or assigns, shall annually pay to the city of Columbus for the benefit of the gas and' light fund of said city the sum of four thousand dollars, the first payment to be made when this ordinance takes • effect and the others annually. thereafter; and as a further consideration for the rights and privileges- therein granted the Columbus Gas Light and Coke Company shall sell gas for and during the ten years next following the passage of this ordinance at a price not exceeding one dollar and ten cents ($1.10) per 1000 cubic feet, and that from the above named price a discount at the rate of ten cents per 1000 feet shall be made on all bills paid on or before the fifteenth day of each month for ga's consumed during the preceding month, making the net price not to exceed one dollar per 1000 feet. ' The gas to be furnished for the above price shall be of at *328 least sixteen candle power, and the council of said city hereby reserves the right to enforce compliance with this specification.
“Section 6. When the said Columbus Gas Light and Coke Company shall file with the city clerk its assent in writing to the terms of this ordinance, the said ordinance and acceptance shall be treated and deemed, as a compliance with law, and the council shall not, for the term (10 years) aforesaid, by ordinance or otherwise, require said company, its successors or assigns, to furnish gas of sixteen (16) candle power at a lower price than that herein named; provided, that nothing herein contained shall be construed as granting exclusive rights or privileges, or preventing any other company from furnishing gas to the citizens of said city of Columbus.
“Section 7. The privileges granted by the provisions of this ordinance shall not be forfeited by a temporary failure to furnish gas, unless such failure is through the neglect or misconduct of said company, its successors or assigns.
“Section 8. This ordinance shall take effect from and after its passage and publication according to law.
“Passed Júne 27, 1892.”
The ordinance was signed by the president of the city council and attested by the cit)r clerk. On the 1st day of July, 1802, the company, by resolution of its board of directors, accepted the provisions of said ordinance in due form, and authorized and directed its president to file said acceptance in writing with the city clerk, all of which was done July 2, 1892.
The defendant company has enjoyed the rights *329 and privileges conferred upon it by the above ordinance every since its acceptance by the company * and has paid ten annual payments as required by its terms. It refused to pay the amounts due July 1, 1902, and July 1, 1903, respectively, although still in the énjoyment of all the privileges and benefits of the contract as before. It hqs released or abandoned nothing which it gained by such contract. When brought into court to answer the demand for the payment of said sums, it urges several reasons why it should not respond to the terms of the obligation which it so long supposed was binding upon it. We have endeavored to extract from the answer and the arguments of counsel in its support the principal points of defense.
(1) It is said that because the predecessor of defendant, the Columbus Gas Light and Coke Company, obtained a right to occupy the streets and other public grounds of the city for the purpose of laying pipes and to sell and distribute gas to the city and its inhabitants in the year 1848 and again in 1850, there was no further grant necessary, and the authority of the city over the subject was exhausted and the grant under the ordinance of 1892 was neither necessary nor warranted, • except as to fix the price at which gas should be furnished. The argument in support of this point is vague and unsatisfactory. It can have no foundation in either fact or law, unless the right to so use the streets and public grounds is derived from a higher source than, and independent of municipal control. It was even claimed on oral argument that the gas company had its authority to occupy the public grounds of the 'city *330 from the statute, and that the municipal authorities could only regulate the mode of use and the price to be charged for the gas. This erroneous view "may account for the entire foregoing proposition. We find nothing'in the statute to uphold the claim made. Section 3550, Revised Statutes, provides: “A company organized for the purpose of supplying gas for lighting the streets and public and private buildings of a city, village, town, or township, may manufacture, sell and furnish the gas required therein for such, or other purposes, and a company organized for the purpose of supplying the inhabitants of a city, village, town, or township with water may sell and furnish any quantity of water required therein for such or other purposes; and such companies may lay conductors for conducting gas or water through the streets, lands, alleys and .squares in such city, village, town, or township, with the consent of the municipal authorities of the -city, village or town, or with the consent of the trustees of the township, and under such reasonable regulations as they may prescribe.”
This section was enacted as an amendment to the former statute, April 17, 1867, 64 Ohio Laws, 255, and it is now Section 3550, Revised Statutes. The former provision so amended, required the consent of the municipal authorities to the laying of conductors of gas or water in the streets and public grounds of the municipality. This legislation authorized the municipal authorities to refuse the privilege of placing such pipes and appliances in the streets, etc., and without their consent no gas company can lawfully enter upon and occupy the streets for the purposes of its business. This *331 was understood to be the law during times past, and must have been so understood by the defendant, as witness the several ordinances under which its predecessor operated, as also the ordinance in favor of defendant, which is now before us. The ordinance of 1850, and those passed before and. afterwards, so far as found in the record, were passed under favor of statutory authority similar to Section 3550, supra. In all of the them the grant of the use of the streets, etc., was found in the ordinances themselves. We are unable to adopt the theory advanced,- and still believe that the city council must be consulted and its consent obtained before -any gas company can occupy public highways and places, for the transaction -of its business. This view is perfectly consistent with the duties imposed by former Section 2640, Revised Statutes, now Section 28 of the Municipal Code, which provides that the council shall have the care, supervision and control of all public highways, streets, avenues, alleys, sidewalks, public-grounds and bridges within the corporation and shall cause the same to be kept open and in repair and free ' from nuisance. Former ordinances re-. ferred to in the answer had run their course and had expired, and the gas company wanted and needed the ordinance of 1892, and without it the company had no right as against the. will of the council to longer continue its business in- the- streets and other public grounds. We deem this sufficient to answer the first point made in the defense.
(2) The answer makes the further claim that the said sum of $4,000 to be paid annually by the defendant as successor of the Columbus Gas Light and Coke Company to the city as required by said *332 ordinance of 1892 was exacted by the city for the purpose of general revenue for said city and for no other purpose, and when collected was, and the sums now sued for, will be used, as such revenue, which should be raised by taxation, and therefore the sums so exacted are an additional tax upon defendant and its business, which is not authorized by law. To sustain this charge of inequality it is said that the ordinance provides that the annual payments shall be “for the benefit of the gas and light fund of said city,” which fund is created and maintained by taxation of property in the city; and that the city never appointed an inspector of gas, or gas-meters, and that when said ordinance of 1892 was passed the city had no such officer, and that the city has not at any time been at any expense on account of inspection or supervision of defendant’s gas, or gas-meters, and said annual payment was not exacted for any purpose of regulation.
As if to increase the enormity of the demands of the city, it is alleged (and it seems to be true) the city, in August, 1896, without defendant’s consent, by ordinance transferred said annual payments to the general expense fund of the city, which latter fund is maintained by a system of taxation. The defendant complains of having to make these annual payments which go into the general expense fund, because it is an exaction' in addition to the payment of its share of the general taxation to maintain said fund, and is an unlawful tax upon the company and its business.
This phase of the defense needs some analysis, inasmuch as it is argued that such facts show *333 the obligation 'to make the annual payments is without consideration and contrary to law.
We have- observed that the gas company can establish its plant and system of pipes, etc., only with the consent of the city council, and we now say that a reasonable condition may be fixed for such consent. This is not prohibited by statute, and it is evident that the privilege and its fruits were of great value • to the company. Such system, or plant, consisted of a network of underground pipes, their connections and other fixtures, as well as surface attachments, absolutely necessary for the successful operation of the business of the company. Frequent excavations and repairs were inevitable, and new extensions of the system were required from time to time. The city being charged with the care and control of its streets and public places, became responsible to third parties for their safe condition, and hence an additional burden was cast upon the city to supervise and see that such safe condition prevailed, which increased responsibility was attended with additional expense, in order that the gas company might be compelled to keep its agreement of regulation, and in case of its neglect, to make the public places occupied by the company safe and free from nuisance.
In the contemplation of the parties to the ordinance contract, the sum of $4,000 per year was considered reasonable and it was so stipulated, and the presumption that it was reasonable must be indulged until it is overthrown. When the present ordinance was passed — 1892—the city had a brilliant future, which has been fully realized,for since that time it has moved forward. with *334 rapid strides in both territory, manufacturing and commercial business, so that eighty miles or more of defendant’s gas pipe conductors with their fixtures are in the streets and other public places, and.it is folly to say that the supervision of all this system, costs the city nothing. It may not have an officer known as an inspector of gas and gas-meters, but it. appears that the duties of such a position fall upon other officers of the city, and it has'a right to be reimbursed. We think the facts in the record warrant this statement.
The city and the gas company, in closing the negotiations for the grant, agreed upon the amount which should be paid the city annually, either as a condition of the grant or as an indemnity to the city for the cost and expense of its supervision and care of the streets, and this sum was inserted in the ordinance and became one of its substantial parts and as such it has since continued, for we are not advised that any change or modification has been made by the only parties authorized to make it.
It might or might not cost the city four thousand dollars a year to supervise and exercise the proper control over the plant and conduct of the gas company. If it should cost more the company could not be compelled to pay more than the agreed amount. If less, the gas company has no right to change its stipulated liability to a scale of actual cost to the city. Nor has the company a right to' ask the court to whittle down its liability to the precise expense the city annually incurs by reason of the privileges the company enjoys in the use and occupancy of the streets and other public grounds. There is no prayer for the reformation of the contract on any ground.
*335 The parties who were competent to make this contract in question, are competent to change it; but it is not for the court to .sanction repudiation by one party or make a new contract instead of the former.
It is true the ordinance says the annual payments are “for the benefit of the gas and light fund,” but the city is the contracting party, and if any one, by contract or otherwise, diverts the money so paid into a wrong fund the act can be corrected by proper proceedings. Such payments do not become general revenue of the city if it be illegal to so transfer them. Hence the clause “for the benefit of the gas and light fund” is not destructive of the company’s obligation.
The city auditor testified that the name “Gas Light Fund” was a mere ledger name in the method of keeping the city books and has no special significance. There is also considerable evidence in the record tending to prove the cost to the city of the supervision of the streets occupied by the company. Therefore it is not necessary to discuss the right of the city to raise general révenue by requiring these payments, a point so fully and ably argued in brief for defendant in error. It sufficiently appears in ■ the record that much, if not all, of these annual payments have directly or indirectly been used by the city for the legitimate purposes contemplated by the parties, and it is not compecent for the gas company to escape because the city authorities have not been judicious in the manner they expended the money. It may have been improperly mingled with the general revenues of the city; and if the contract or ordinance, accepted and yet relied on by the company,, *336 gives countenance to a wrongful diversion of the payments, it can not repudiate its obligations on that account. It is charged with the duty of making the payments, but it is not charged with any responsibility for the proper disbursement of the same.
The answer avers that in 1896, the city council passed an ordinance transferring payments made by the gas company “to the general expense account fund of said city,” and that this was done without the knowledge or consent of the company, and that this particular fund is one raised by general taxation. Here again we have a supposed avenue of escape on the ground that the city committed a wrong in mixing the payments with a general expense fund. The knowledge or consent of the gas company, or their absence, in no sense affects the situation. If the ordinance complained of is illegal there is a way to ■ restore the money to its proper function, but the liability of the coriipany- can not be thus extinguished. We think this branch of the defense not good.
We do not deem it necessary to consider here the many authorities cited in the briefs of learned counsel. . They are collected in their proper place preceding this, opinion.
(3) The remaining defense is that when the ordinance of 1892 was passed, the city knew that the only means the defendant had for the payment of said annual payments was its receipts and income derived from the consumption and sale of gas to the city and private consuméis, and to meet these annual amounts, it would need to retain its then business; yet the city, having such knowledge, subsequently permitted the Federal *337 Gas & Fuel Company to enter upon and occupy the streets and other places and lay pipes therein for the distribution and sale of natural gas as an illuminant to- the city and its inhabitants, which permission was given first in 1899. It is pleaded that natural gas could be and was thereby furnished at a much lower price and at a greater profit than artificial gas, which was being furnished by the defendant; and further, that the above natural gas company was not required to pay anything for the benefit of the general expense fund except the excess received for the gas above fifteen cents per cubic foot, and that no natural gas was sold by that company above that price, and therefore the city received nothing.
It is also complained that in February, 1899, the Central Ohio Natural Gas Company secured from the city' the right and privilege of piping said streets and other places for the purpose of conveying natural gas for public and private use, and that' in 1901 the latter company did lay its pipes and furnished natural gas to the city and its inhabitants, and that the city then fixed the price of natural gas at thirty-five cents per thousand cubic feet, with a discount for prompt payment.
It is alleged that when defendant obtained its contract of 1892, natural gas had not then been used, or believed to be suitable for illumin*ating purposes, and that it did not come into general use for such purposes until* about the year 1896 or 1897; and that by reason of the city giving the right to these companies to furnish the cheaper-gas the defendant was wholly unable to compete with them — was not able to retain its consumers *338 and was thereby deprived of the means to make said annual payments, and that it would be “unconscionable and inequitable to require or compel the defendant” to pay said- annual sums, or to make any further payments thereof. The reply denied the alleged results of the acts of the city.
The court of common pleas heard evidence as to the loss or decline in defendant’s business after the natural gas companies were admitted to the field, but its finding for the company is general, and we are not advised by the record what weight such defense had with that court. And the judgment of the circuit court is a general affirmance.
If all that is said in this branch of the defense should be conceded, what, then, aré the rights of the parties?
The city did not violate the provisions of the ordinance of 1892 under which defendant holds, for it did not grant it the exclusive right to occupy the streets and furnish gas to. the city and fits inhabitants; and the statute (Section 3550, Revised Statutes) does not purport to grant, either directly or by permission of thé municipal authorities, an exclusive right to any one company to lay its conductors for conducting gas through the streets of a city, town, or village. This is held in The State, ex rel., v. The City of Hamilton, 47 Ohio St., 52, 70, 71. On page 71, it is said: “A gas company may open the streets and lay down its pipes with the consent of the city, under such reasonable regulations as the city may make; but the right to give such consent and prescribe such regulations does not carry with it a power to exclude every other gas company or to bar the municipality from ever using unoccupied portions of *339 the streets for the same purposes. In State, ex rel., v. Cincinnati Gas Light & Coke Company, 18 Ohio St., 262, 289, the principle is stated, that to enable the city council to grant, by ordinance in the nature of a contract, an exclusive right to use the streets and alleys of the city for the. purpose of laying therein pipes for carrying gas to be used in lighting the city for a term of twenty-five years, the power must be shown' to have been expressly granted, or to be so far necessary to the proper execution of the powers which are expressly granted as to make its existence free from doubt. Grants by the public are to be strictly construed, and an intention to grant an exclusive privilege, or monopoly, is not to be implied. Where exclusive privileges are not expressly given by the charter they should not be held to be conferred.”
But if any one should doubt the soundness of the doctrine so advanced the ordinance itself should silence all cavil, for the last clause of section six thereof provides, “that nothing herein contained shall be so construed as granting exclusive rights or privileges, or preventing any other company from furnishing gas to the citizens of said city of Columbus.”
The defendant and its assignor, the Columbus Gas Light and Coke Company, under prior ordinances and the one under consideration have occupied and used many of the city streets and grounds for the .transaction of its business for over half a century, and when the last ordinance was passed ■ a.nd accepted, both the city and the company were facing the future, not knowing what it might unfold as to new means of furnishing *340 light. The company was content with past profits, and would venture upon the unknown future. If its profits are now behind it, the city should not be tied to the destiny of the company and be obliged to exclude other gas and electric companies, to the great detriment of its inhabitants. What time has' developed, the company must be held to have contemplated.
In respect to the gas company, the contract may now be a hard one to comply with, but there are innumerable instances in business life where contracts of parties have become hard and unprofitable, 'yet the courts can not discharge from liability on that ground, for such risks were assumed when the contracts were made.
We find that the lower courts erred in their judgments, and perceiving no good reason to remand the case for another trial, we render final judgment for the sums mentioned in the petition.

Judgment reversed and judgment for plaintiff in error.

Shauck, C. J., Crew and Summers, JJ., concur..