## CONSERVATION OF SURPLUS LIFE INSURANCE FUND.

Circuit Court of Cuyahoga County.

JAMES G. BELL v. THE UNION CENTRAL LIFE INSURANCE COMPANY.

Decided, November 20, 1911.

*Life Insurance—Right of Participating Policy Holders to Maintain Action to Conserve Surplus Fund—Previous Action in Quo Warranto Testing Right to Declare a Dividend out of Surplus Fund not a Defense—Sections 12325 and 12327.*

1. Participating policy holders in a life insurance company may maintain an action in equity to conserve for their benefit a surplus fund accumulated under the by-laws of the company for their benefit from earnings of participating policies.

2. It is no defense to an action brought for such purpose by and on behalf of all of said participating shareholders that the Supreme Court in an action in *quo warranto,* brought by the attorney-general against the corporation for the purpose of testing the right of the company to declare a dividend to its stockholders out of said surplus fund, has refused the relief prayed for, the participating policy holders not being parties to said action.

*A. H. Martin, William Howell* and *W. K. Stanley,* for plaintiff in error.

*Jas. R. Garfield, Maxwell & Ramsey* and *George A. Welch,* contra.

WINCH, J.; MARVIN, J., AND HENRY, J., concur.

Error to the Court of Common Pleas.

Plaintiff filed his petition in behalf of himself and all the policy-holders of the defendant company, similarly situated with himself, setting up the fact that he became a participating policy-holder in the company on March 15, 1904, and as such, entitled under his policy and the by-laws of the company to the benefits of a surplus fund accumulated by it which, on December 31, 1907, amounted to $2,422,184.25.

Up to that date the company had a capital stock of $100,000 on which the stockholders were entitled to a semi-annual divi-

dend of five per cent., and additional dividends from profits derived from non-participating policies.

The by-laws provide that from the residue of the profits arising from the mutual business, after paying necessary expenses and approved claims, setting aside a 4 per cent. reserve, establishing a surplus fund and paying said dividends to stockholders, the board shall annually declare a dividend to the mutual policyholders according to the kind and class of each policy *or* place to the credit of the policy its equitable proportion of the undivided surplus which shall be payable according to the terms and conditions of the policy.

He alleges that up to the first day of January, 1908, the company made no separation of its receipts and expenditures, profits and losses, as they pertained to participating and to non-participating policies.

He alleges that the entire surplus fund on said date had accumulated from the profits derived from participating policies, and that by reason of the manner in which said fund had been kept and dealt with by it during the company's entire existence, the company had estopped itself from claiming, as against the participating policy-holders, that any portion of said fund had been derived from profits on non-participating policies.

He alleges that on said 31st day of December, 1907, the company undertook to apportion said surplus fund into two funds, such that the amount credited to one fund should represent the surplus arising from its participating policies, and that the amount credited to the other fund should represent the surplus arising from the non-participating policies, and without any basis therefor or right so to do, on said last named date placed $779,788 of said surplus fund into a separate fund, claiming the right to use and treat said fund as a fund derived from non-participating policies, to be used for the sole benefit and advantage of its stockholders.

He sets up that out of *this* fund the company, on June 16, 1908, declared a stock dividend to its stockholders of $400,000, upon which it proposes to pay to them a semiannual dividend of 5%, making an annual charge against the company therefor of $40,000.

The petition is voluminous and contains many other allegations tending to show the unlawfulness of the transactions mentioned, the interest therein of the participating policy-holders, the prejudice to their rights arising therefrom, the impossibility of estimating the money damages to each of said policy-holders, and ends with the following prayer:

"Wherefore, plaintiff prays that pending this action said company be enjoined from appropriating any part of said surplus fund to a stock dividend, and from delivering said stock certificates for said proposed dividend from said surplus fund; and from paying any dividends to stockholders other than said 5% semi-annual dividend on $100,000; and that on final hearing said injunction may be made perpetual. And plaintiff prays that said defendant may be required to account fully for said surplus fund, and that the amount and condition of said fund may be fixed and determined by the court; that the court find and determine and decree said surplus fund to be a trust fund for the sole use and benefit of participating policy-holders who became such prior to December 31st, 1907, and that the court make such order and direction to said company with respect to the keeping and maintenance of said. fund, and its future accumulation, and share of profits of said business, and as to its distribution and apportionment among said participating policy-holders as shall be found to be just and equitable, and as will secure the full and complete enjoyment and distribution of the same by said participating policy-holders during the lives of their respective policies, and of all future accumulations thereon as well. And plaintiff prays for all such other and further relief in the premises, as shall be found to be just and equitable."

To this petition an answer was filed, setting up several defenses. The third defense, as a bar to the present proceedings, sets up the proceedings in the quo warranto case brought by the Attorney-General of the state in the Supreme Court against the company, to test its right to apportion said surplus fund and declare said stock dividend of $400,000, and the judgment of said court in favor of the company, found in 84 O. S., 459.

To this third defense of the answer, a demurrer was interposed and overruled, whereupon the petition was dismissed and judgment rendered for the defendant. The case is here on error, and we are asked to review the sufficiency of the petition as well as the sufficiency of said third defense.

We deem the petition sufficient to authorize an accounting, and part, at least, of the relief prayed for. Were the plaintiff and his class stockholders in the company, objecting to the division of funds accumulated for their benefit, and diverted to the benefit of other stockholders, nobody would question their right, after refusal of the company, itself, to remedy the matter, to invoke equity jurisdiction to redress or prevent any wrong injuriously affecting the property rights of the corporation. The rule must be the same here.

The participating policy-holders, under the by-laws and their policies, have a very decided interest in keeping the surplus fund intact. This right may rest in contract, but is unenforceable by each policy-holder by an action for damages. The benefits to each policy-holder are contingent upon many circumstances, which may increase or diminish said fund before actual division of it by payment of aliquot shares thereof to beneficiaries of said policy-holders. Hence, there is no way of estimating the damages to them. However, they should not be left remediless, and equity, considering the mutuality of the relations of the policy-holders to the company and the company to them, assimilates such relations to that of stockholders in a corporation to the corporate entity.

As stockholders in a corporation can not sue for dividends until the directors have declared them, but can bring an action against the company, upon its refusal to act, requiring it to conserve the corporate assets, so here the policy-holders can not sue for dividends from the surplus until the directors have declared them, but should be entitled to require the company to protect said surplus and administer it for their benefit.

As to the third defense in the answer: The third paragraph of the journal entry of the Supreme Court reads as follows:

"That, as found by the circuit court, the defendant in error made no separation of its receipts and expenditures, profits and losses, as they pertained to participating and to non-participating policies, from the time it began the life insurance business up to the first day of January, 1908, and that, in such conduct of its business, it accumulated a surplus, which, on December 31, 1907, amounted to $2,422,184.25, of which a sum largely in excess

of $400,000 was derived from non-participating policies; and that the surplus derived from the non-participating policies of the defendant for the years 1908 and 1909 was in excess of $400,000.''

The finding that the surplus derived from the non-participating policies of the defendant for the years 1908 and 1909 was in excess of $400,000, is not to be overlooked. It was December 31, 1907, that the company readjusted its books, and started to keep separately the profits from participating and non-participating policies.

The plaintiff here makes no objection to the company's separating said profits, *from that time forward,* and if the stock dividend is to be paid out of profits thereafter arising from non-participating policies, he will make no complaint, but he *does* object to taking out of the surplus fund heretofore accumulated, the sum of $779,788 and appropriating it to the benefit of the stockholders.

It was a matter of indifference to the state when this sum of $400,000 was accumulated; all it was interested in was whether the company had a right to declare the dividend and issue the additional stock. It would seem as if it purposely left to interested parties to determine from which fund the $400,000 was taken.

This brings us to the question of the effect to be given to an adjudication in quo warranto, a proceeding between the state and the corporation. Does it necessarily and always determine the rights of individuals, creditors for instance, as between them and the corporation? Such is claimed to be its effect by counsel for the company, and so the court below found.

In this, we think, it was in error. Some of the decisions in this state, throwing light on this question, are as follows:

In the case of *State, ex rel,* v. *Cincinnati Gas Light & Coke Co.,* 18 O. S., 262, it was held that a judgment in favor of the defendant in the district court of Hamilton county, upon an information in the nature of a quo warranto, filed by the prosecuting attorney of that county, upon an individual relation, is not a bar to a subsequent information of a similar character, filed by the attorney-general.

Also, that the state, in a quo warranto case, would not be bound by an injunction issued against the corporation by the circuit court of the United States in a case brought by an individual against the corporation, to which case the state was not a party.

In the case of *Rawland* v. *Meader Furniture Co.*, 38 O. S., 269, it was held:

"Where a corporation *de facto*, in a proceeding in quo warranto, has been ousted from the franchise of being a corporation, such ouster is no defense to a suit by a creditor against stockholders, to enforce payment of their stock subscriptions."

In the case of *Society Perun* v. *Cleveland*, 43 O. S., 481, it was held that rights acquired or liabilities incurred by a *de facto* corporation and by parties dealing with it in good faith, will not be divested or defeated by a subsequent judgment in *quo warranto* proceedings.

In *State ex rel* v. *Railroad Company*, 50 O. S., 239, the court refused to determine the private rights of the relator as against the corporation with regard to the use of certain lands, said use not being a usurpation of the property rights of the state.

But it is said that the rule to be deduced from these cases has been changed or modified, or explained by subsequent legislation, and our attention is called to that part of General Code, Section 12327, which reads as follows:

"The orders of the court in which *such* quo warranto proceedings are instituted, or of the court to which they are remanded, shall be binding upon the trustee or trustees, stockholders, creditors and other persons interested in such corporation, unless reversed by appropriate proceedings therefor."

This is taken from an amendment to Sections 6781 and 6782 of the Revised Statutes, found in 100 O. L., 102, the title of the act being: "To amend Sections 6781 and 6782 of the Revised Statutes of Ohio, relative to the authority of courts over trustees of defunct corporations."

This title correctly describes the original sections and the recent law, including what is now found in General Code 12327, has reference to orders made in the dissolution of corporations. "Such quo warranto proceedings" refers to quo warranto pro-

ceedings wherein the court renders a judgment dissolving the corporation and appoints trustees ''for the benefit of the creditors and stockholders thereof'' to wind it up.

Very properly *such* proceedings should bind the creditors; they are represented in the proceedings by the trustees appointed to represent them.

We do not think this statute applies to the case at bar, nor do we think the creditors of the defendant corporation were, as a class, or otherwise, represented in the quo warranto proceedings set up in the third defense of the answer, nor that their rights were in any manner adjudicated or affected by the judgment therein rendered.

For error in overruling the demurrer to the third defense and in not sustaining it, and for error in dismissing the petition, the judgment is reversed and the cause remanded, with instructions to sustain the demurrer to said third defense, and for further proceedings according to law.