In considering the affidavits and exhibits filed in the cause, the court found the facts to be as follows:
1. That the plaintiff, under a charter granted by the Legislature (Laws 1881, ch. 64, p. 786), made a contract, or obtained permission from the Board of Aldermen of the City of Asheville, to (726) place and operate a single street railway along certain streets of the city of Asheville, and amongst other streets were Depot Street and Patton Avenue; that this permission was given in form of an ordinance of the Board of Aldermen of the City of Asheville, passed in session on 3 December, 1887; and of said ordinance the grant was made exclusive for ten years from its date, 3 December, 1887. *Page 444 
3. That under such grant so given, the plaintiff constructed and operated a line of street railway in said city in and upon the streets designated, and has been operating same for three or four years, and on this line so constructed has been carrying freight and passengers from the railroad depot in said city to the Court Square and business centers of the city; and its company has to this time furnished sufficient means and facilities to supply the demand between the two points.
5. That the defendant, under an act of the Legislature subsequently passed (Laws 1891, ch. 262, p. 208), and under grant and permission from the Board of Aldermen of the City of Asheville, is about to construct and put in operation a street railway running from Sulphur Springs, about 5 miles from the city, into said city, and its route passes the railroad depot in said city at present time, and will run into the business center of the same, at or near the Court Square, on a street called College Street.
6. That in running said line the defendant will place its track on Depot Street a distance of 450 feet, and on Patton Avenue 250 feet; that the route of the defendant as proposed runs from the railroad depot along Depot Street 450 feet, and then leaves said street, running along the streets of said city not granted to plaintiff until it again (727) reaches the line of plaintiff at Patton Avenue, and runs along said avenue a distance of 250 feet until it reaches College Street, passing the post-office, and runs down College Street to a point about 30 feet from public square.
7. That the line of the defendant's track and its construction will not physically interfere with plaintiff's track, but will cause the defendant to compete for passengers and traffic between the railroad depot and business centers of Asheville, and so will greatly impair the balance of plaintiff's franchise and railway.
8. That the defendant, by using the portions of Patton Avenue and Depot Street as described, is enabled to approach the business centers of Asheville by a more direct route than it could otherwise obtain; and while its line, with the exception of the above interference, runs along a different way and supplies the residents along such different way with railroad facilities, it is substantially a complete line for patronage between the railroad depot and Court Square in the city of Asheville.
From the above facts the court, being of the opinion that the Board of Aldermen of the City of Asheville had no authority under existing statutes to make the grant to plaintiff exclusive, dissolved the restraining order theretofore issued, and plaintiff appealed.
If the Legislature had the power to grant or to delegate the authority to a municipality to grant the exclusive privilege of constructing a track or running a street railway on particular streets, we find nothing in the charter of the City of Asheville, or that of the plaintiff company, that can be fairly construed as an attempted (728) exercise of such power, either directly or through the medium of its agent. The charter conferred on the plaintiff all of the powers and privileges granted to the street railway of Fayetteville, etc., and "such other privileges as may be granted by the municipal authorities of Asheville, in the County of Buncombe aforesaid." Clearly, this language clothed the municipality with no new or additional power, but authorized it only to exercise such authority as it already possessed for the furtherance of the objects for which the company was chartered. It is familiar and elementary learning that the authority of municipal corporations is restricted to such powers as are expressly granted by their charters, or such as arise by fair implication out of or as are necessary to the exercise of those granted. 1 Dillon Corp., sec. 89 (55); 2 Dillon, sec. 695. It is needless, therefore, to discuss the question whether the Legislature had the authority to do what it did not attempt to do. The judgment of the court below is
Affirmed.
Cited: Elizabeth City v. Banks, 150 N.C. 412.
(729)