The pleadings upon which judgment was rendered disclose this case: On the application of defendant D. B. Banks, the plaintiff, a municipal corporation, duly chartered by the General Assembly of North (409) Carolina, through its mayor and aldermen, on 19 June, 1905, undertook to grant to said Banks, by an ordinance duly passed, on 3 July, 1905, a franchise, extending thirty years, to construct in said town a gas plant for the purpose of furnishing gas, for light, fuel and power to the citizens of Elizabeth City. Said franchise carried the right to use the streets of said city as the said Banks deems necessary and requisite for the purpose of laying pipes and other devices incidental and necessary to the establishment, location and operation of said plant. Permission is given said Banks to use alleys, lanes, highways, streets, bridges and streams within the limits of said city; also to place poles and string wires along the streets, etc. Permission is given said Banks to contract with the citizens of said town for furnishing gas for light, fuel and power, and to contract with the town of Elizabeth City for said purpose. Maximum rates which said Banks was to charge the citizens for gas were fixed in said ordinance. The city reserved the right to buy the plant at the end of ten years, at a price to be fixed by arbitration. In consideration of the grant of the franchise, Banks contracted with the city that he would begin the erection of said gas plant within nine months from the passage of the ordinance, and complete the same within twenty-one months from said date, subject to certain contingencies named. For the purpose of securing the performance of the covenants entered into by him, and in consideration of the grant of said franchise, the defendant Banks, as principal, and the defendant Fidelity Deposit and Trust Company executed to plaintiff a bond in the sum of $5,000, conditioned that if the said Banks should fail to comply with *Page 337 
the stipulations in said contract they would pay to said city $5,000 as liquidated damages, it being recited therein that, "in the opinion of the undersigned, the said amount of $5,000 is not an unjust, absurd or oppressive amount, but a fair and just compensation to be paid upon the failure," etc. Plaintiff alleges that defendant Banks began the construction of the plant within nine months, but failed to complete the same within twenty-one months. Defendant admitted the execution of the bond, but denied that the plaintiff had any corporate power to grant the franchise, and that its attempt to do so was utterly void; that by reason thereof there was no consideration to support the covenants (410) made by Banks, the performance of which was secured by the bond, and that same were void; that by reason of the absence of power to grant the franchise the ordinance passed by the board of aldermen was ultra vires and void. Defendants also aver that defendant Banks began to construct said plant within nine months, but was prevented from completing it by the financial panic which overtook the country, rendering it impossible for him to procure the materials necessary for completing the work; that he asked for an extension of time, which was refused, etc.
His Honor, being of the opinion that the condition of the bond had been forfeited, and that the matter set up in the answer did not constitute a defense thereto, rendered judgment upon the pleadings for $5,000 and costs. Defendants excepted and appealed.
The question which lies at the threshold of this case is whether, in the absence of any legislative authority, express or implied, the plaintiff, through its governing body, had any power to grant to the defendant Banks the franchise to use its streets in the manner set forth in the ordinance. It is conceded that, prior to the enactment of section 2916, subsection 6, of the Revisal, which became effective 1 August, 1905, no such power was conferred upon municipal corporations by the general statutes prescribing the powers of cities and towns. By that statute they are authorized "to grant, upon reasonable terms, franchises to public utilities." Looking, therefore, to the charter of the plaintiff (Private Laws 1905, ch. 15), we find no express power conferred upon the board of aldermen to grant franchises in or over the streets of the city. Section 19 confers the power to make such ordinances as they may deem necessary for the government of the city, not inconsistent with the laws of the land, and by all needful *Page 338 
ordinances to secure order, health, quiet and safety within the city (411) limits and for one mile beyond. Such special powers as are conferred are confined to passing ordinances relating to markets, fires, observance of the Sabbath, nuisances, powder, speed of riding and driving vehicles, keeping the sidewalks clear of obstructions, etc., regulating building material, regulating charges for hacks and omnibuses, and appointing inspectors of fish and meats. Provision is made for electing a street commissioner, with power to keep in repair the streets, bridges, etc. The board of aldermen are given power to lay out and open streets, to extend or discontinue them, and to condemn land for these purposes. We find no grant of power to make provision for furnishing lights, power or fuel, or for establishing plants for that purpose. No question is presented upon this record in regard to the power, by implication, for providing for lighting the streets. This would doubtless be found, by necessary implication, in the power to regulate the streets, provide for the safety of the people, etc. This, under the more recent decisions of this Court, would be not only an implied power, but a duty, the discharge of which would involve a necessary expense.Faucett v. Mt. Airy, 134 N.C. 125; Davis v. Fremont, 135 N.C. 538, and other cases reversing Thrift v. Elizabeth City, 122 N.C. 31. It will be noted that the contract made with defendant Banks makes no other provision for furnishing light for the streets than a permission to make a contract with the city for that purpose. He is under no obligation to do so. This question is therefore eliminated from the discussion. The purpose of granting the franchise is to permit defendant Banks to supply light, fuel and power to the citizens of the town. He does not come under any obligation to furnish all of the citizens. It is true that maximum rates are prescribed, and the city reserves the power to buy the plant after ten years, at a price to be fixed by arbitration. Whether the plant to be established by the defendant Banks is a public utility may be open to controversy, but our decision does not rest upon that question, and it is not necessary to discuss it. We assume, for the purpose of the decision, that it is a public utility. It is an elementary principle of law that a municipal as well as any other corporation can exercise only such powers as are expressly granted or necessarily (412) and fairly implied in or incident to the exercise of powers which are granted. Any fair, reasonable doubt concerning the existence of the power is resolved against the corporation. 1 Dillon Mun. Corp. (4 Ed.), 89. Mr. Justice Bynum, in Smith v. New Bern, 70 N.C. 14, states the doctrine approved by Judge Dillon and uniformly followed by this Court — in fact, so far as our examination goes, of all American courts. He says: "All corporations derive their powers from legislative grants, and can do no act for which authority is not expressly given or *Page 339 
may not be reasonably inferred. But if we say that they can do nothing for which a warrant could not be found in the language of their charter, we deny them in many cases the power of self-preservation, as well as many of the means necessary to effect the essential object of their creation; hence they may exercise all the powers within the fair intent and purpose of their creation which are reasonably necessary to give effect to powers expressly granted." Reese Ultra Vires, sec. 170; R. R. v. R. R.,114 N.C. 725. Applying this general principle to the case at bar, what power has a municipality, through its governing board, to use or permit the use of its streets for other than the purpose of a highway? It does not appear, nor do we deem it at all material to inquire, whether the city owns the fee in the soil over which the streets are laid out, or only an easement. Whatever difference of opinion exists in respect to the rights of abutting owners in regard to the use of the streets for other than the purposes of highways does not affect the merits of this case. In either event the law is well settled that the title either of the fee in the soil or an easement is vested in the municipality, in trust for the use of the people as and for a public highway, and that it can not, without legislative authority, divert them from this use. How far the power of the Legislature to permit other burdens to be imposed upon them may be exercised without providing for compensation to the municipality is not involved in this discussion, and we only refer to it to exclude any suggestion that in defining the power of the Legislature to impose burdens upon the streets of a municipal corporation we are referring to that question. We held, in Brown v. Electric Co., 138 N.C. 533, andStation v. R. R., 147 N.C. 428, that the Legislature could not do so without providing for compensation to the abutting owner. (413) That the Legislature has very extensive powers over the public streets as a part of the public highways of the State is well settled, and that such power as the municipal authorities have are derived from legislative grant is equally well settled. Judge Dillon says: "Public streets, squares and commons, unless there be some special restriction when the same are dedicated or acquired, are for the public use, and the use is none the less for the public at large, as distinguished from the municipality, because they are situated within the limits of the latter, and because the Legislature may have given the supervision, control and regulation of them to the local authorities. The Legislature of the State represents the public at large, and has, in the absence of special constitutional restraint, and subject to the property rights and easements of the abutting owners, full and paramount authority over all public ways and public places." 2 Mun. Corp. (4 Ed.), 656. That the commissioners of a town can not without legislative authority sell a street or park has been uniformly held by this Court. Moose v. Carson, *Page 340 104 N.C. 431; White v. R. R., 113 N.C. 610; Southport v. Stanly,125 N.C. 465; Turner v. Commissioners, 127 N.C. 153. In White v.R. R., supra, Shepherd, C. J., discusses the question in the light of the authorities. The opinion is amply sustained, both by reason and authority. When we look beyond our own jurisdiction for cases "in point," we find that the principle has been applied to attempted grants of franchises to put gas pipes in the streets. In Gaslight Co. v. Gas Co.,25 Conn. 19, it appears that the common council of the city, whose general powers are much the same as the board of aldermen of plaintiff, undertook by a resolution to confer upon the plaintiff an exclusive franchise for fifteen years to lay and maintain its pipes over or under the streets of the city. Hinman, J., says: "The right of way over the streets being public to all who may have occasion to use them, and the only power of the city over them being given by its charter in order to regulate such use, it seems clear that the city can make no grant which shall convey to the grantee any interest in them which can in any proper sense be deemed property." The opinion is quoted with (414) approval by Judge Dillon. 2 Mun. Corp., 693. The franchise in that case was exclusive, but, as will be seen, the decision is put upon the ground stated. The plaintiff also claimed the franchise under an act of the Legislature, and in respect to this the Court held that the grant of an exclusive franchise was void because of constitutional inhibition. In Gaslight Co. v. Light Co., 115 U.S. 659, it is held that the right to place gas pipes and mains in the public streets of a city for the distribution of gas for public and private use is a franchise, the privilege of exercising which can only be granted by the State or by the municipal government of the city acting under legislative authority. In S. v. Gas Co., 18 Ohio St. 262, the Court, holding the same opinion, said: "This franchise may be granted directly by the State, or by a municipal corporation if it is clothed with power to make the grant. Such power in the municipality must either be expressly granted or arise out of the terms of the statute by necessary implication, so direct and necessary as to be clearly conferred." Purnell v. McLane,98 Md. 589. In Gas Co. v. Dwight, 29 N. J., 242, Van Fleet, Vice Chancellor, says: "The defendants claim the right to use the public streets of Jersey City for the purpose of placing pipes therein, through which they may furnish gas to their customers. This is a right which the sovereign power alone can confer. The rule must be considered settled that no person can acquire a right to make a specific or exceptional use of a public highway not common to all the citizens of the State except by a grant from the sovereign power." In Boston v. Richardson, 13 Allen, 146, it is said that the right of putting gas pipes in public highways has never been exercised except by virtue of an express statute. Mobile v. *Page 341 R. R., 124 Ala. 132; R. R. v. R. R., 39 Fla. 306; Gaslight Co. v.Middletown, 59 N. J., 228. The authorities are quite uniform upon the subject. The wisdom of putting the limitation upon the power of governing boards of towns and cities is apparent. If they be permitted, without express power, known to the people who select them, to grant to persons and corporations franchises over the public streets, the arteries of business, social and community life, it would be to subject them to burdens unwisely or otherwise conferred, limiting and restricting their use by the people for whose benefit they have been laid out (415) and by whose taxes they are maintained. In the absence of any express grant of power in the charter, it would be difficult, if we adhere to the canons of construction of corporate charters, to find it by implication. It will hardly be contended that the laying of gas pipes for the purpose of furnishing light, fuel and power to the citizens by a private business enterprise is essential to or implied in the power to regulate and control the use of the streets. As we have seen, the courts have not found the power except as an express grant from the sovereign. If the attempt to confer the franchise upon defendant Banks is ineffectual because the plaintiff had no power to do so, the result is that the ordinance was ultra vires and therefore void. The doctrine is strongly stated in R. R. v. R. R., 8 C. E. Gr., 441: "Whether franchises are delegated by special charters or under general laws, they are emanations from the people in their sovereign capacity. What is not conferred is withheld and remains in their original source. The attempt to exercise them by individuals or companies until so conferred can be nothing but an unwarrantable usurpation of power. This doctrine is rooted and grounded in the common law, and equally so in public policy and public expediency." If it be suggested that, while the ordinance was ineffectual to confer a franchise for thirty years, it was valid as a license and protected defendant Banks from prosecution for maintaining a nuisance, the obvious answer is that a franchise is property, intangible, it is true, but none the less property — a vested right, protected by the Constitution — while a license is a mere personal privilege, and, except in rare instances and under peculiar conditions, revocable. The plaintiff did not undertake to give or defendant to acquire a license, but a franchise, upon the faith of which he was to invest a large sum of money and establish a business of permanent character. In the absence of power in the board of aldermen to grant a franchise in the streets, we can see no reason why the Legislature, at the next or any future session, could not, in the exercise of its right to control and prescribe the use to which streets might be subjected, have prohibited the defendant Banks from continuing to use the streets or maintain his pipes, lines, poles and "other devices" thereon. Whether a succeeding board (416) *Page 342 
of aldermen would have been estopped to do so, after the pipes were laid and the other means for maintaining and operating the plant established, it is not necessary to decide. That corporations may under some conditions be estopped from avoiding ultra vires acts is settled; but the question does not arise upon this record, because it does not appear that any substantial work was done under the authority of the ordinance, and the plaintiff declared the franchise forfeited under the terms of the grant. It is again suggested that the ordinance was ratified by the plaintiff subsequent to the act of 1905 (Revisal, sec. 2916).
Without discussing the question whether a contract void, becauseultra vires, can be ratified, we find in the pleadings nothing to indicate a purpose to ratify, or any act which is capable of being construed into a ratification. It is alleged in the complaint that defendant Banks failed to commence the erection of the plant within nine months and to complete it within twenty-one months. The defendant Banks alleges that he laid a part of the pipes within nine months from the date of the ordinance. It does not appear that he laid any pipe after 1 August, 1905, or that any other act was done by him in connection with the work. He has never used the franchise. The plaintiff does not allege any ratification or any act which could be so construed. If, as we have seen, the ordinance was void because the plaintiff was without authority to grant the franchise, it is evident that the defendant Banks acquired nothing of any value by reason of its passage. If he had, in the performance of his covenant, begun the work within the prescribed period, he would have been liable to be enjoined or prosecuted for obstructing the streets. It is manifest that as he acquired nothing his covenants are without any consideration to support them. There is a total failure of consideration, and no action can be maintained for damages by either party. It is manifest that plaintiff can not maintain an action for damages because of the failure of defendant to do an unlawful act — that is, obstruct the streets, which is indictable at common law. The plaintiff conferred no right upon the defendant Banks, and therefore can claim nothing from him on account of its unauthorized attempt to do (417) so. We forbear discussing the other questions raised by defendants in their brief. The judgment must be reversed, with direction to the Superior Court to set it aside and take such further action as is in accordance with law.
Reversed.
Cited: Water Co. v. Trustees, 151 N.C. 175, 176. *Page 343