DAVID E. STILLINGS and FRANCIS D. SAWYER, a North Carolina Partnership, doing business as "Community Garbage Service" v. THE CITY OF WINSTON-SALEM, NORTH CAROLINA, a municipal body corporate

CLYDE H. WHITMAN, JR., doing business as "South Fork Sanitary Service," a sole proprietorship v. THE CITY OF WINSTON-SALEM, NORTH CAROLINA, a municipal body corporate

LARRY K. TUTTLE, doing business as "Forsyth Garbage and Container Service," a sole proprietorship v. THE CITY OF WINSTON-SALEM, NORTH CAROLINA, a municipal body corporate

No. 488PA83

(Filed 28 August 1984)

**Eminent Domain § 2; Municipal Corporations § 23— county franchises for garbage collection—city annexation of franchise areas—city garbage services—no compensation for taking**

An exclusive solid waste collection franchise granted by a county pursuant to G.S. 153-136 does not remain effective in areas subsequently annexed by a city and thereby entitle the franchisees to compensation for a taking

when a city, pursuant to the mandate of G.S. 160A-47, begins providing its own garbage collection service in the newly annexed areas.

Justice MITCHELL did not participate in the consideration or decision of this case.

ON discretionary review of the decision of the Court of Appeals, 63 N.C. App. 618, 306 S.E. 2d 489 (1983), reversing the summary judgments for defendant entered by *Helms, J.*, 15 December 1981 in Superior Court, FORSYTH County. Heard in the Supreme Court 13 June 1984.

The plaintiffs in these three inverse condemnation actions operate garbage collection services in Forsyth County. In 1978, pursuant to N.C.G.S. 153A-122, each plaintiff was granted by Forsyth County an exclusive territorial franchise to perform commercial solid waste collection and disposal services in designated areas of the county, outside the city limits of Winston-Salem, in accordance with N.C.G.S. 153A-136. The franchises were for a period of five years, beginning on 1 January 1979.

Subsequently, on 17 December 1979, the City of Winston-Salem annexed some of the areas served by the franchisees. The annexations were upheld in *In re Annexation Ordinance*, 303 N.C. 220, 278 S.E. 2d 224 (1981), and became effective on 22 June 1981. On that date, the City began to furnish free solid waste collection services to the residents of the newly annexed areas in compliance with N.C.G.S. 160A-47 which requires a municipality to provide garbage collection services to annexed areas on substantially the same basis and in the same manner as such services are provided in the rest of the city.

Plaintiffs filed suits on 11 September 1981 seeking to recover compensation and damages for losses sustained by them resulting from the City's actions. Plaintiffs alleged that the City's actions violated their contractual rights under the county franchises or, alternatively, that the actions amounted to a taking of plaintiffs' property without due process of law.

On 5 October 1981, the City answered and the following day moved for summary judgment in each case. On 6 November 1981, plaintiffs filed cross-motions for summary judgment on the liability issue. Following a hearing on the motions, summary judgments were entered in favor of defendant on 15 December 1981.

The plaintiffs appealed to the Court of Appeals. That court, in a 6 September 1983 opinion, reversed the decision of the trial court, concluding that the City's extension of solid waste collection services into the newly annexed areas had so impaired the value of the franchises as to constitute a taking for which the plaintiffs are entitled to compensation. The cases were remanded to the trial court for a determination on the issue of damages. We allowed defendant's petition for discretionary review.

*Pfefferkorn, Cooley, Pishko & Elliot, P.A., by Jim D. Cooley and William G. Pfefferkorn, for plaintiff appellees.*

*Womble, Carlyle, Sandridge & Rice, by Roddey M. Ligon, Jr., City Attorney Ronald G. Seeber, and Assistant City Attorney Ralph D. Karpinos for defendant appellant.*

MARTIN, Justice.

The primary question presented for review is a matter of first impression for this Court: Does an exclusive solid waste collection franchise granted by a county remain effective in areas subsequently annexed by a city and thereby entitle the franchisees to compensation for a taking when the city, pursuant to statutory mandate, begins providing its own garbage collection service? For the reasons stated here, we answer the question in the negative and conclude that the Court of Appeals erred in finding a "taking" requiring compensation by the City of Winston-Salem.

In essence, plaintiffs contend that the City's extension of solid waste collection services into their franchise areas represented a governmental taking of their property for which plaintiffs are entitled to just compensation under the fifth and fourteenth amendments to the United States Constitution and under article I, section 19 of the Constitution of North Carolina. Plaintiffs also emphatically reject the premise that passage by the legislature of the annexation ordinance was an implied condition justifying termination of any exclusive franchise granted pursuant to N.C.G.S. 153A-136. We disagree with both contentions and will address the latter issue first.

The crux of the plaintiffs' argument is that the City's actions in terminating the franchises upon annexation is an unconstitutional taking of their property. Specifically, they rely on *Long v. City of Charlotte*, 306 N.C. 187, 293 S.E. 2d 101 (1982), in which

we held that for a "taking" to occur, "there need only be a substantial interference with elemental rights growing out of the ownership of the property." *Id.* at 199, 293 S.E. 2d at 109. In *Long,* we stated that:

> In order to recover for inverse condemnation, a plaintiff must show an actual interference with or disturbance of property rights resulting in injuries which are not merely consequential or incidental; a "taking" has been defined as "entering upon private property for more than a momentary period, and under warrant or color of legal authority, devoting it to a public use, or otherwise informally appropriating or injuriously affecting it in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof." *Penn v. Coastal Corp.,* 231 N.C. 481, 57 S.E. 2d 817 (1950).

306 N.C. at 199, 293 S.E. 2d at 109. Although we recognize a franchise as property, the use and enjoyment of which is entitled to protection as any other property right, 36 Am. Jur. 2d *Franchises* § 5 (1968), we also are constrained to reemphasize the axiom set forth in *Long: "Obviously not every act or happening injurious to the landowner, his property, or his use thereof is compensable."* 306 N.C. at 199, 293 S.E. 2d at 109 (emphasis ours).

In general, a state legislature has the power to delegate to the state or inferior agency the authority to make ordinances, such as those giving rise to franchise rights, as it deems appropriate in the lawful exercise of the police power. *State v. Tenore,* 280 N.C. 238, 185 S.E. 2d 644 (1972); *Whitney Stores v. Clark,* 277 N.C. 322, 177 S.E. 2d 418 (1970). In North Carolina, authority of counties to issue exclusive solid waste collection franchises is derived from N.C.G.S. 153A-122 and -136. N.C.G.S. 153A-122, entitled "Territorial jurisdiction of county ordinances," provides in part:

> Except as otherwise provided in this Article, the board of commissioners may make any ordinance adopted pursuant to this Article applicable to any part of the county not within a city. In addition, the governing board of a city may by resolution permit a county ordinance adopted pursuant to this Article to be applicable within the city. The city may by resolution withdraw its permission to such an ordinance.

Under N.C.G.S. 153A-136, authority is conferred on counties to make ordinances to, *inter alia,*

> regulate the storage, collection, transportation, use, disposal, and other disposition of solid waste. Such an ordinance may . . . [g]rant a franchise to one or more persons for the exclusive right to commercially collect or dispose of solid wastes within all or a defined portion of the county and prohibit any other person from commercially collecting or disposing of solid wastes in that area. The board of commissioners may set the terms of any franchise. . . .

Thus Forsyth County, in enacting the ordinance giving birth to plaintiffs' franchises, was restricted to the powers, rights, and privileges conferred on it by the law which brought its authority into being.

> In granting franchises, a municipal corporation possesses and can exercise only powers granted by express words, or those *necessarily implied in or incident to the legislative grant,* and any ambiguity or doubt as to the existence of a power is to be resolved against the corporation, and the power denied; statutes delegating authority to grant franchises are subject to rules of strict construction. The agency to which such authority is delegated has only such powers as are expressed or *necessarily implied,* and must act in accordance with the conditions prescribed by law.

36 Am. Jur. 2d *Franchises* § 12 (1968) (emphases added). *See Elizabeth City v. Banks,* 150 N.C. 407, 64 S.E. 189 (1909). Plaintiffs, therefore, entered the franchise agreements, issued under N.C.G.S. 153A-136, subject to the condition in N.C.G.S. 153A-122 limiting the applicability of the ordinance to "any part of the county not within a city." Following the rule set out by the Oregon Court of Appeals in a case similar on its facts to those involved here, "any franchise granted was implicitly subject to the condition that it would only be exercisable in those areas in which the county had the power to grant, protect and regulate the franchise." *City of Estacada v. American Sanitary Service,* 41 Or. App. 537, 541, 599 P. 2d 1185, 1187 (1979). Therefore, plaintiffs' franchises would exist only so long as the county had the authority to grant and protect them; they would be valid for only so long as the territory involved was not within the City. Plaintiffs'

franchises were subject to the existing statutory right of the City to annex portions of the areas served by plaintiffs. The plaintiffs had no rights which the City was bound to respect.

It is essential to realize that "all grants of . . . franchises . . . are taken subject to existing laws, remaining unrepealed." *Chesapeake & Ohio Railway Co. v. Miller*, 114 U.S. 176, 188, 29 L.Ed. 121, 125 (1885). The City of Winston-Salem provides garbage collection services without charge to residents of newly annexed areas in compliance with the mandate set out in N.C.G.S. 160A-47:

> Prerequisites to annexation; ability to serve; report and plans.

> A municipality exercising authority under this Part shall make plans for the extension of services to the area proposed to be annexed and shall, prior to the public hearing provided for in G.S. 160A-49, prepare a report setting forth such plans to provide services to such area. The report shall include:

> . . . .

> (3) A statement setting forth the plans of the municipality for extending to the area to be annexed each major municipal service performed within the municipality at the time of annexation. Specifically, such plans shall:

>     a. Provide for extending police protection, fire protection, *garbage collection* and street maintenance services to the area to be annexed on the date of annexation on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation.

(Emphasis ours.) Upon annexation, the City began providing garbage collection services as required by this section. By the annexation of the property in question, the county's franchise terminated and the police power of the City became operative. Just as "[c]orporations which receive franchises take" the granted privileges subject to the police power of the state," 36 Am. Jur. 2d *Franchises* § 7 (1968), plaintiffs similarly received their franchises subject to the police power of the City.

To illustrate this, defendant relies on *Taylor v. Bowen*, 272 N.C. 726, 158 S.E. 2d 837 (1968), which is analogous. In *Taylor*, a portion of Cumberland County was annexed by the City of Fayetteville, and the issue was whether the county retained zoning authority over that property. This Court held that the zoning authority ended upon the annexation, on the basis that zoning regulations (like solid waste regulations) are an exercise of the police power and by their very nature cannot be bartered away by contract or lost in any other manner. Also informative is the case of *Metropolitan Services, Inc. v. Spokane*, 32 Wash. App. 714, 649 P. 2d 642 (1982), where a portion of territory covered by a state permit authorizing private companies to provide garbage and refuse service was annexed by the city, resulting in cancellation of the permit. In its opinion, the court stated:

> We do not find a constitutional taking here. The issuance of [state certificate number] G-39 was at all times subject to the prior constitutional right of the City to exercise its police power and its statutory right of annexation. Therefore, when a portion of the territory covered by G-39 was annexed in 1967, a constitutional taking did not occur.

*Id.* at 719-20, 649 P. 2d at 645.

In *Calcasieu Sanitation Service v. City of Lake Charles*, 118 So. 2d 179 (La. App. 1960), a case virtually indistinguishable on its facts from those before us, the plaintiff had an exclusive franchise for the operation of a garbage pickup service within certain areas of the parish outside the city limits of Lake Charles. Portions of this franchise area were annexed by the city. Plaintiff brought suit claiming that the city was interfering with its exclusive right to afford garbage service. The Louisiana Court of Appeals held that the franchise was subject to subsequent events such as annexation; that the parish could grant a franchise in territories outside of cities only; and it denied any recovery. In its opinion, the court stated:

> The city furnishes free garbage service to the residents of the annexed areas, as it does to all its other residents, under its legal obligation to do so set forth by LSA-R.S. 33:179 . . . As our learned trial brother stated, "the contract was entered into [by the plaintiff] subject to the right of the city and the inhabitants to annex portions of the area in-

cluded in the garbage district," and the contract is thus subject in the respect noted to the legal effects resulting from such annexation.

118 So. 2d at 180. The court rejected plaintiff's allegation that following implementation by the city of its own garbage collection program for its residents, the plaintiff was "no longer allowed" to continue providing such services to the newly annexed areas. Although the city's actions may have destroyed the plaintiff's practical ability to retain or obtain paying customers, the court concluded that:

> Perhaps a different question would be involved if the city actually hindered the plaintiff by prohibitory ordinance or discriminatory licensing from continuing to afford garbage-disposal within the affected area to those residents still desiring it from the plaintiff; and our decision expressly does not pass upon the situation that would thus be presented.

*Id.* at 181. In this case, as in *Calcasieu*, the City has done nothing to prohibit the plaintiffs from carrying on their collection of solid waste. No ordinance has been passed preventing them from doing so, and they are free to compete with the City on that endeavor if they so choose.

We hold, then, given the limited territorial jurisdiction of the Forsyth County ordinance, that the plaintiffs' franchises were not protected from the City's actions and therefore did not survive annexation as to those areas which became part of the City.

Even assuming arguendo that plaintiffs' franchises survived annexation, and we hold they did not, the word "commercially" as used in N.C.G.S. 153A-136 (endowing a county with authority to "[g]rant a franchise to one or more persons for the exclusive right to *commercially* collect or dispose of solid wastes within all or a defined portion of the county and prohibit any other person from *commercially* collecting or disposing of solid wastes in that area" (emphases ours)) leads to the conclusion that a commercial service franchise does not provide protection to the holder against government service which would compete with it.

It is generally accepted that a governmental agency is not precluded from competing with its franchisee despite the fact the value of the franchise is diminished or destroyed by such competi-

tion. *See, e.g., Helena Water Works Co. v. Helena,* 195 U.S. 383, 49 L.Ed. 245 (1904); *Power Co. v. Elizabeth City,* 188 N.C. 278, 124 S.E. 611 (1924); *Mountain v. Pinellas County,* 152 So. 2d 745 (Fla. Dist. Ct. App. 1963). Such competition does not result in a taking or injuring of the franchisee's property without due process of law. The case of *Larson v. South Dakota,* 278 U.S. 429, 73 L.Ed. 441 (1929), is instructive on this point. In *Larson,* county commissioners granted an exclusive ferry franchise, with a provision that no other ferry should be operated within two miles of the franchise. The state then proceeded, with legal authority, to build a free bridge across the river within two miles of the ferry landing. The Court held that the franchise was not violated and that the franchisee was not entitled to compensation, on the principle that "public grants are to be strictly construed, that nothing passes to the grantee by implication." *Id.* at 435, 73 L.Ed. at 445. *See Charles River Bridge v. Warren Bridge et al.,* 36 U.S. 420, 9 L.Ed. 773 (1837).

A survey of United States Supreme Court cases involving the question of "takings" supports our position. In *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 73 L.Ed. 2d 868 (1982), the Court reviewed and discussed an array of its cases dealing with governmental takings of private property. Citing frequently to its opinion in *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 57 L.Ed. 2d 631 (1978), in which the Court surveyed the general principles governing the takings clause of the United States Constitution, the Court reiterated its finding that " '[a] "taking" may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good.' " 458 U.S. at 426, 73 L.Ed. 2d at 876 (citation omitted). The Court recognized the distinction between cases involving a permanent physical occupation and cases involving governmental action outside a person's property which results in consequential damages. The Court noted, "A taking has always been found only in the former situation." *Id.* at 428, 73 L.Ed. 2d at 877. "More recent cases confirm the distinction between a permanent physical occupation, a physical invasion short of an occupation, and a regulation that merely restricts the use of property." *Id.* at 430, 73 L.Ed. 2d at 879. Finally, the Court

restated the factors, originally enunciated in *Penn Central, supra,* to be considered in determining the existence of a taking:

> [R]esolving whether public action works a taking is ordinarily an ad hoc inquiry in which several factors are particularly significant — the economic impact of the regulation, the extent to which it interferes with investment-backed expectations, and the character of the governmental action.

458 U.S. at 432, 73 L.Ed. 2d at 880.

In the case before us, the actions of the City were not of such character as to require compensation. The City did not confiscate any real or personal property of the franchisees. The City has not issued any private franchise, nor has the City directed that any of its new citizens must allow the City to collect the garbage in question. The City did not unlawfully extend governmental service, and it did not directly interfere with the franchisees' property.

The franchisees in this case have no absolute rights with respect to their franchises. All rights are limited by neighboring rights, and when the rights of these franchisees are considered in light of the rights of the public through the City of Winston-Salem, the franchisees' rights are subject to the rights of these others. The City, by exercising its duty, has not impinged upon or violated any of the rights of the franchisees. Furthermore, not every damage to private property by the government is subject to compensation. We conclude, then, that plaintiffs have no compensable injury. Accordingly, the decision of the Court of Appeals is

Reversed.

Justice MITCHELL did not participate in the consideration or decision of this case.