The Honorable Nathan V. George State Representative 11236 North New Hope Road Dardanelle, AR 72834-7776
Dear Representative George:
I am writing in response to your request for my opinion on the following questions:
 1. Can the municipal trash service collect trash outside the city limits?
 2. Does this practice violate the private sector?
RESPONSE
Question 1: Can the municipal trash service collect trashoutside the city limits?
In my opinion, the answer to this question is "yes," so long as the city has entered into an agreement to provide service outside the city limits pursuant to the authorization set forth at A.C.A. § 14-27-104(a)(8) (Repl. 1998) and, possibly, at A.C.A. §8-6-211(a) (Supp. 2005).
Municipalities are creatures of the legislature and as such have only the power bestowed upon them by statute or the Arkansas Constitution. Jones v. American Home Life Insurance Co.,293 Ark. 330, 738 S.W.2d 387 (1987). Despite the adoption of the "Home Rule" Act in 1971, Acts 1971, No. 266, cities are prohibited from enacting any ordinances "contrary to the general laws of the state." Ark. Const. art. 12, § 4; see also FortSmith v. Housing Authority, 256 Ark. 254, 506 S.W.2d 534 (1974);Nahlen v. Woods, 255 Ark. 974, 504 S.W.2d 749 (1974). The Arkansas Supreme Court has further held that where state regulation is so pervasive as to make reasonable the inference that the state has left no room for supplemental legislation, local provisions in the same field are prohibited. Kollmeyer v.Greer, 267 Ark. 632, 593 S.W.2d 29 (1980).
Subsection 8-6-211(a) of the Arkansas Code (Supp. 2005) provides as follows regarding a municipality's authority and obligations with respect to solid waste management:
 All municipalities shall provide a solid waste management system which will adequately provide for the collection and disposal of all solid wastes generated or existing within the incorporated limits of the municipality or in the area to be served and in accordance with the rules, regulations, and orders of the Arkansas Pollution Control and Ecology Commission.[1] The governing body of the municipality may enter into agreements with one (1) or more other municipalities, counties, a regional solid waste management district, private persons or trusts, or with any combination thereof, to provide a solid waste management system, or any part of a system, for the municipality, but the agreement shall not relieve the parties of their responsibilities under this subchapter.
(Emphases added.) This statute obligates a municipality to provide waste management services, either directly or through agreement with some other entity, either within city limits "or in the area to be served." Read in context, the alternative "area to be served" would not appear to preclude service outside city limits; however, the statute appears primarily intended to ensure that service be provided as necessary throughout the municipality, whether such service is provided in whole or in part by the city or in whole or in part by a private provider. In this regard, the statute invites comparison with A.C.A. §§14-27-101 through -104 (Repl. 1998 Supp. 2005), which mandates the establishment of intergovernmental cooperation councils to encourage "cooperation by the various local government jurisdictions within each county in the most efficient use of their mutual resources and in providing of services to their local communities in the most efficient and mutually advantageous manner possible," A.C.A. § 14-27-101(a), including in the area of "[s]olid waste management services," A.C.A. § 14-27-104(a)(8). The latter statutory scheme appears designed to encourage interlocal cooperation in the provision of services, including, where feasible, services that extend beyond jurisdictional limits.
Your question appears to be whether a city may determine on its own authority to serve areas outside the city limits. In my opinion, neither A.C.A. § 8-6-211 nor any other provision of the Code authorizes a city unilaterally to provide such extraterritorial service. I believe A.C.A. § 8-6-211, like A.C.A. §§ 14-27-101 through -104, contemplates such extended service only subject to an agreement with the other political subdivision to be served. Section 14-56-413 of the Code (Repl. 1998) does provide that the territorial jurisdiction of a city having a planning commission may extend outside its city limits for a distance of up to five miles, depending upon the municipality's size. However, this extraterritorial jurisdiction exists solely for purposes of planning in anticipation of future development in areas possibly to be annexed into the city, see A.C.A. §14-56-414 (Repl. 1998), and I do not believe it entails any authorization to provide solid waste management services to residents outside the city limits. Having offered this opinion, I should note that A.C.A. § 14-56-414 contains the following catchall provision:
 (e) OTHER PLANS. The commission may prepare and adopt such other plans as are significant to the health, safety, and general welfare of the municipality and its environs.
However, I do not believe this planning authority supports a city's presently and unilaterally providing waste management services outside of its city limits. Again, this statute deals exclusively with planning authority, not with the current provision of services.[2]
Question 2: Does this practice violate the private sector?
As reflected in my response to your previous question, I believe it is impermissible for a city unilaterally to provide waste collection outside its city limits. If this practice is indeed occurring, you second question would appear to be moot, given that the collections might simply be challenged as statutorily unauthorized.
However, assuming some agreement were to authorize one political subdivision to provide waste management services in another political subdivision, the mere fact that a private entity was also providing such services in the receiving political subdivision would not preclude the political subdivisions from agreeing to the extraterritorial service. No law generally prohibits governments from competing with private enterprises.See, e.g., United States v. Solomon, 219 Ark. 309,241 S.W.2d 369 (1951); Morley v. Berg, 218 Ark. 195, 235 S.W.2d 873
(1951); Arkansas State Highway Comm'n v. Dodge, 181 Ark. 539,26 S.W.2d 879 (1930); Maryland Casualty Co. v. Rainwater,173 Ark. 103, 291 S.W.2d 1003 (1927); Callaway v. Cossart,45 Ark. 81 (1885); see also Op. Att'y Gen. 95-212, 95-138, 93-237. A local governmental body is not prohibited from providing services or engaging in activities in competition with local businesses if the services or activities are properly within the governmental body's power and authority. See Ops. Att'y Gen. 95-138 and 93-237 (copies enclosed). Indeed, local governments may displace competition and establish monopolies for solid waste management and disposal services. LH Sanitation v. Lake City Sanitation,769 F.2d 517 (8th Cir. 1985), citing Geurin, supra.
Assuming a city undertakes to provide service outside its city limits pursuant to an agreement with another political subdivision, see discussion supra, and further assuming some private entity has a franchise with the other political subdivision to provide solid waste collection services in the area at issue, the question would arise whether the city's collection activities in this area might be precluded because of the private franchise agreement. In my opinion, only a finder of fact fully acquainted with all the attendant circumstances could determine the various parties' rights in a situation of the sort described. You have provided no factual background reciting either what agreements, if any, there might be between or among political subdivisions for the provision of solid waste services or what agreements, if any, there might be between or among political subdivisions and any private waste management contractor. In theory, an existing franchise agreement between one political subdivision and a private contractor might factor into a determination whether that political subdivision might agree to allow another political subdivision to provide waste management services. However, only a finder of fact acquainted with the pertinent chronology and the terms of all applicable agreements and contracts could determine what are the parties' respective rights. This office is neither equipped nor authorized to undertake any such factual inquiry.
As a general proposition, the situation you describe might in some respects be analogous to one addressed in Ark. Op. Att'y Gen. No. 93-015, in which my predecessor considered whether a city's provision of water services to certain annexed areas already being served by two nonprofit rural water associations would obligate the city to compensate the private water providers.[3] My predecessor concluded that, assuming the city's provision of services would not be precluded by the existence of a Farmers Home Administration loan to private nonprofit providers, see 7 U.S.C. § 1926(b) (West 1999),[4]
a court might well conclude that a city's competing with a private provider would not amount to a constitutionally impermissible governmental "taking." With respect to determining when a "taking" has occurred, my predecessor observed:
 As a general rule, there is a taking when the act involves an actual interference with, or disturbance of, property rights, resulting in injuries which are not merely consequential or incident. . . . It has been stated that a taking of property for which compensation must be paid does not require an actual physical taking, but may consist of an interference with the rights of ownership, use, and enjoyment, or any other rights incident to property. . . . However, acts done in the proper exercise of governmental powers which do not directly encroach upon private property, though they may impair its use, do not amount to a taking of such property within the meaning of the ordinary constitutional provision that private property shall not be taken for public use without just compensation. . . .
Opinion No. 93-015, citing 26 Am. Jur. 2d Eminent Domain § 157 (1966).[5]
My predecessor concluded that municipal competition with a private provider in an annexed area would generally not give rise to a claim for compensation by the private provider. In support of this conclusion, my predecessor quoted the following from Alford v. City of Denton, 546 S.W.2d 672, 673 (Tex.App. 1977), in which a city providing water services had never issued a franchise to the owners of the private water utility and did not interfere with the utility's operations:
 [G]overnmental action which causes or results in an individual's loss of business, standing alone, does not constitute a "taking" of property which gives rise to any right to receive compensation from the sovereign. A person operating a business in, under or over the streets, alleys and other public places within an incorporated municipality without a franchise has no property right in the continued use of such premises for conducting his business.
See also Stillings v. City of Winston-Salem, 319 S.E.2d 233
(N.C. 1984) (holding that a solid waste collection and disposal franchisee, operating under a county rather than a city franchise, was not entitled to compensation where the city extended collection services to the annexed territory and did not confiscate or directly interfere with any property of the franchisee.)
Extrapolating from the authorities just discussed, I believe that a municipality that has properly entered into an agreement with another political subdivision to provide waste collection services outside the municipality's corporate limits would not be obligated to compensate a private contractor financially injured as a result of the municipality's entry into the market. The serving municipality under these circumstances would not have any contractual obligation to the private entity, which would be a franchisee only of the political subdivision to be served. For reasons discussed above, the serving municipality could further not be considered to be "taking" any property interest vested in the private contractor. However, in the event the private contractor had entered into in exclusive services contract with the political subdivision to be served, it may be that that political subdivision might be precluded from entering into a service agreement with another political subdivision.[6]
Having acknowledged this possibility, I must again point out that I am unable to opine regarding how, if at all, these general propositions of law might bear upon the particular circumstances that prompted your question. Only a court acquainted with all of the pertinent facts could determine whether the situation you describe is permissible under Arkansas and federal law.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
Enclosure
[1] This agency is currently known as the Arkansas Department of Environmental Quality.
[2] In Ark. Op. Att'y Gen. No. 2001-132, one of my predecessors suggested that a city might, within the geographical range of its extraterritorial jurisdiction, undertake various activities in the exercise of its police power, which includes the power to provide sanitation services. Guerin v. City of Little Rock,203 Ark. 103, 105, 155 S.W.2d 719 (1941). Although I agree with this general proposition, I believe this authority is circumscribed by the fact that a city's extraterritorial jurisdiction is limited to subdivision planning, A.C.A. § 14-17-208(i) (Supp. 2005) — an enterprise that might warrant a municipality's proscribing a developer from undertaking activities inimical to the city's master plan for the unincorporated area but that I do not believe would warrant a city in undertaking routine services such as trash collection in the unincorporated area.
[3] I appreciate that the situation that concerns you apparently does not involve a municipality's provision of services to an annexed area. However, the general principles of law discussed immediately below might extend to the situation where a municipality provides services outside its city limits pursuant to a purported agreement with another political subdivision.
[4] This federal statutory preclusion applies not only to private nonprofit water providers, but also to private nonprofit corporations that have been issued federal loans to establish "waste disposal facilities." 7 U.S.C. § 1926(a) (West Sup. 2006).
[5] I recognize that the situation giving rise to your request apparently did not involve any exercise of the municipality's power of eminent domain. However, in any inverse condemnation action challenging the municipality's action, the question would nevertheless remains whether the situation described in your request might in any sense involve a governmental taking.
[6] In Guerin, supra at 105, the Arkansas Supreme Court held that, notwithstanding the fact that the police power is one of "the inherent attributes of sovereignty" that "cannot by any means be bartered away," a municipality may contract exclusively with one entity to provide solid waste disposal service. Seealso the attached Ark. Op. Att'y Gen. No. 2006-062 (discussing at length the extensive authority for the proposition that a municipality may exclusively contract for the collection and disposal of solid waste). In Guerin, id., the court further held that trash collection and disposal is an exercise of the municipal police power that cannot be compromised by any contract — a conclusion that raises a question regarding a private contractor's right to recover on a supposedly exclusive contract with a political subdivision if the political subdivision determines that it would serve its residents' interests to enter into an agreement with another political subdivision to provide waste management services.