NO. COA14-740

NORTH CAROLINA COURT OF APPEALS

Filed: 16 December 2014

THE TOWN OF BLACK MOUNTAIN, NORTH
CAROLINA and THE COUNTY OF
BUNCOMBE, NORTH CAROLINA,

    Plaintiffs,

    v.                           Buncombe County
                                   No. 12 CVS 05118

LEXON INSURANCE COMPANY and BOND
SAFEGUARD INSURANCE COMPANY,

    Defendants.


Appeal by defendants from order entered 4 March 2014 by Judge Gary M. Gavenus in Buncombe County Superior Court. Heard in the Court of Appeals 20 October 2014.

> *Cannon Law, P.C., by William E. Cannon, Jr. and Ronald E. Sneed, P.A., by Ronald E. Sneed, for plaintiffs-appellees.*

> *Shumaker, Loop & Kendrick, LLP, by William H. Sturges and Daniel R. Hansen, for defendants-appellants.*


HUNTER, Robert C., Judge.


The Town of Black Mountain, North Carolina ("the Town") and the County of Buncombe, North Carolina ("the County") (collectively "plaintiffs") filed suit against Lexon Insurance Company and Bond Safeguard Insurance Company ("defendants") seeking to enforce a series of subdivision performance bonds.

The trial court entered summary judgment in plaintiffs' favor. On appeal, defendants argue that summary judgment for plaintiffs was improper because: (1) neither the Town nor the County has standing to enforce the bonds; and (2) the statute of limitations for plaintiffs' claim has run.

After careful review, we affirm the trial court's order.

**Background**

From March 2005 through February 2007, defendants entered into four subdivision performance bonds ("the bonds") as sureties for The Settings of Black Mountain, LLC and Richmarc Black Mountain, LLC (collectively "developers").[1] Approval from the County for the developers to begin construction on a residential subdivision was conditioned on obtaining the performance bonds to secure completion of the project. Thus, the obligee on each of the bonds in question was the County, not the Town. Each of the bonds contained a clause indicating that defendants, as sureties, would not be required to complete the infrastructure or pay the principal amount of the bond until they received a resolution from the obligee indicating that the improvements had not been installed or completed by the

---

[1] Although plaintiffs named all four bonds in their complaint, the construction secured by one of the bonds has since been completed; thus, only three remaining bonds are the subject of plaintiffs' claim.

developers. The bonds also contained a provision holding defendants and the developers jointly and severally liable for any amounts due upon default.

The real property that was secured by the bonds was annexed by the Town at varying times between May 2005 and February 2007. Defendants assert that they lacked knowledge of the annexation until 5 January 2012. In 2009, the Town sought confirmation from the developers that they intended and had the means to complete the infrastructure secured by the bonds. In a letter dated 23 October 2009, attorneys for the developers indicated that they were working toward closing a recapitalization loan. On 18 December 2009, a principal in one of the development companies stated via e-mail that "we still believe we have viable entities, though obviously troubled. We are committed to finishing our communities without need of the bonds[.]" Indeed, construction activity by the developers continued into 2010. Ultimately the companies failed. Richmarc Black Mountain, LLC filed its final annual report on 7 June 2011, and The Settings at Black Mountain, LLC was administratively dissolved on 21 August 2011.

On 5 January 2012, the County contacted defendants and asked if they would consent to an assignment of the bonds to the

Town.  In its inquiry, the County conceded that, due to the annexation, "Buncombe County no long[er] has any jurisdiction over the properties and cannot enforce any rights per its ordinances."  Defendants did not consent to the assignment.

On 1 August 2011 and 20 December 2011, the Town sent defendants notice that the developers had ceased all construction activity.  On 22 June 2012, the County assigned its rights in the bonds to the Town, which accepted assignment on 9 July 2012.  On that same day, the Town adopted a resolution finding the infrastructure to be incomplete.  The Town sent defendants notice of their claims under the bonds on 24 July 2012.  Following nonpayment by defendants, plaintiffs filed their complaint for breach of contract on 25 October 2012.  Both the County and the Town brought suit because they anticipated that defendants would challenge standing if either party sued separately; thus, their claims are pled in the alternative pursuant to Rule 8 of the North Carolina Rules of Civil Procedure.

Plaintiffs and defendants each moved for summary judgment and were heard on their respective motions 10 February 2014.  The trial court entered an order granting summary judgment for

plaintiffs on 4 March 2014. Defendants filed timely notice of appeal.

**Discussion**

**I. Standing**

Defendants first argue that neither the Town nor the County has standing to bring suit. Specifically, defendants contend that once the Town annexed the property covered by the bonds, the bonds were extinguished, leaving no rights for the County to assign. We disagree.

"This Court reviews orders granting summary judgment de novo." *Foster v. Crandell*, 181 N.C. App. 152, 164, 638 S.E.2d 526, 535 (2007). Summary judgment is appropriate "only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (internal quotation marks omitted). The burden of proof rests with the movant to show that summary judgment is appropriate. *Development Corp. v. James*, 300 N.C. 631, 637, 268 S.E.2d 205, 209 (1980). We review the record in the light most favorable to the non-moving party. *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975).

Defendants rely on *Stillings v. City of Winston-Salem*, 311 N.C. 689, 319 S.E.2d 233 (1984), in support of their contention that the bonds were extinguished when the subject properties were annexed by the Town. In *Stillings*, the Court stated the issue it considered as follows: "Does an exclusive solid waste collection franchise granted by a county remain effective in areas subsequently annexed by a city and thereby entitle the franchisees to compensation for a taking when the city, pursuant to statutory mandate, begins providing its own garbage collection service?" *Id.* at 691, 319 S.E.2d at 235. The Court answered this question in the negative. *Id.* In holding that the exclusive waste collection franchise entered into by the county and a private party terminated in the geographic areas annexed by the city, the Court noted that the garbage collection company, "had no rights which the [c]ity was bound to respect." *Id.* at 694-96, 319 S.E.2d at 237-38. According to the statutory mandate in N.C. Gen. Stat. § 160A-47, the city was required to provide garbage collection services without charge to its residents in newly annexed areas. *Id.* at 694, 319 S.E.2d at 237. Therefore, annexation created a conflict between the exclusive franchise rights held by the plaintiffs and the statutory mandate imposed on the city. In recognition of the

rule that "[c]orporations which receive franchises take the granted privileges subject to the police power of the state," the Court ultimately held that "[b]y annexation of the property in question, the county's franchise terminated and the police power of the [c]ity became operative." *Id.*

Defendants argue that, pursuant to *Stillings*, "once a town annexes territory that is the subject of a private contract between the county and a private citizen, the annexation effectively nullifies the contract." Thus, defendants contend that the bonds were extinguished when the annexation took place, rendering them unenforceable by either the County or the Town.

We do not read *Stillings* so broadly. The *Stillings* Court did not hold that the franchise agreement between the garbage collection company and the county was terminated in its entirety; rather, the contract was terminated only in those geographical areas annexed by the city. *See Stillings*, 311 N.C. App. at 696, 319 S.E.2d at 238. Therefore, *Stillings* does not support the idea that annexation automatically terminates an entire agreement between a county and a private party. Furthermore, the conflict between the exclusive waste collection franchise and the police powers of the annexing city was crucial to the *Stillings* Court's holding. Here, unlike in *Stillings*,

the bonds do not conflict with the Town's police power. There is no statute requiring the Town to behave adversely to the agreement between defendants and the County. Rather than attempting to terminate the bonds, the Town seeks to enforce them. This situation contrasts sharply with the facts of *Stillings*, where the annexing city was required by statute to provide free garbage collection services in direct contravention of the exclusive franchise agreement between the county and the plaintiffs. Based on these material distinctions, we decline to extend the *Stillings* holding to the facts of this case.

We agree with defendants that the County lost standing to enforce the bonds after annexation. The bonds were created pursuant to the County's "subdivision control ordinance," allowing the County to "provide orderly growth and development" by entering into surety bonds with developers to "assure successful completion of required improvement." *See* N.C. Gen. Stat. § 153A-331 (2013). But the County's power to issue subdivision control ordinances was geographically limited by N.C. Gen. Stat. § 153A-122 (2013), providing that such ordinances are only applicable "to any part of the county not within a city." Therefore, after annexation, the County no longer had statutory authority to call the bonds. The County's

attorney admitted as much in his 5 January 2012 e-mail to defendants requesting their consent to assignment, wherein he stated that "Buncombe County no long[er] has any jurisdiction over the properties and cannot enforce any rights per its ordinances." We also agree with defendants that, prior to assignment, the Town did not have standing to enforce or call the bonds because it was not a party to the agreements.

However, we find nothing in the law or within the agreements themselves indicating that assignment of the bonds from the County to the Town was impermissible or without legal effect. *See North Carolina Bank & Trust Co. v. Williams*, 201 N.C. 464, 465-66, 160 S.E. 484, 485-86 (1931) (holding that an indemnity bond was freely assignable as a chose in action). Indeed, defendants "do not contest the general law that, absent contrary language or public policy, bonds can be assigned." Here, the bonds do not contain any language restricting their assignability, and we believe public policy favors assignability under these facts. It is uncontested that substantial infrastructure remains incomplete as a result of the developers' financial troubles. If neither the Town nor the County are able to call the bonds, defendants would in effect receive a windfall

by being released from their obligation to pay the sums owed under the bonds.

Accordingly, we hold that the assignment of the bonds from the County to the Town was sufficient to allow the Town to enforce the agreements against defendants. Thus, the assignment conferred standing upon the Town to sue for the alleged breach of those agreements. We affirm the trial court's order as to this issue.

## II. Statute of Limitations

Defendants also argue that summary judgment for plaintiffs was improper because their cause of action is time-barred by the statute of limitations. We disagree.

N.C. Gen. Stat. § 1-52(1) (2013) provides that actions concerning a "contract, obligation or liability arising out of a contract" have a three-year limitations period. Plaintiffs do not dispute that section 1-52 applies to claims for breach of contract. However, they assert protection under the doctrine of *nullum tempus occurrit regi*, which generally allows for governmental bodies to be exempt from statutory time limitations in bringing civil lawsuits. In *Rowan Cnty. Bd. of Educ. v. United States Gypsum Co.*, 87 N.C. App. 106, 359 S.E.2d 814 (1987) ("*Rowan I*"), and *Rowan Cnty. Bd. of Educ. v. United*

*States Gypsum Co.*, 332 N.C. 1, 418 S.E.2d 648 (1992) ("*Rowan II*"), our Courts analyzed the doctrine of *nullum tempus* in North Carolina and developed a framework for its application. "If the function at issue is governmental, time limitations do not run against the State or its subdivisions unless the statute at issue expressly *includes* the State. If the function is proprietary, time limitations do run against the State and its subdivisions unless the statute at issue expressly *excludes* the State." *Rowan II*, 332 N.C. at 9, 418 S.E.2d at 654 (emphasis in original).

Because section 1-52 is silent as to its application to the State or its subdivisions, this issue turns on whether plaintiffs are engaged in a proprietary or governmental function. The *Rowan II* Court noted that the distinction between governmental and proprietary action in the context of sovereign immunity is the same as the distinction to determine whether the State benefits from the protection of *nullum tempus*. *Rowan II*, 332 N.C. at 9, 418 S.E.2d at 654. Thus, the case most helpful to this analysis is *Derwort v. Polk County*, 129 N.C. App. 789, 501 S.E.2d 379 (1998).

In *Derwort*, the issue before this Court was whether Polk County's enactment of a subdivision control ordinance pursuant

to sections 153A-121 and 153A-331 rendered it immune from suit under the public duty doctrine. *Id.* at 792, 501 S.E.2d at 381. The Court noted that section 153A-121 was included under the heading titled "Delegation and Exercise of the General Police Power," and that section 153A-331 allowed counties to issue ordinances "in a manner that . . . will create conditions essential to public health, safety, and the general welfare." *Id.* Citing *Lynn v. Overlook Development*, 98 N.C. App. 75, 78, 389 S.E.2d 609, 611 (1990), it also noted that "[a] municipality ordinarily acts for the benefit of the public, not a specific individual, in providing protection to the public pursuant to its statutory police powers." *Id.* at 791, 501 S.E.2d at 381. The Court went on to hold that "[t]he plain language of the statute and our case law thus indicate that subdivision control is a duty owed to the general public, not a specific individual," and therefore the county was immune from suit by virtue of the public duty doctrine. *Id.* at 792, 501 S.E.2d at 381.

However, defendants argue that *City of Reidsville v. Burton*, 269 N.C. 206, 152 S.E.2d 147 (1967), is more applicable than *Derwort*, and therefore, we should find that the act of suing under the bonds is a proprietary rather than governmental

function.  In *Burton*, the Court noted that generally municipal corporations are immune from application of a statute of limitations because "construction and maintenance of public streets and of bridges constituting a part thereof are governmental functions[.]"  *Id.* at 210, 152 S.E.2d at 151. However, the Court held that the City of Reidsville was engaged in a proprietary function when it sued for breach of contract with a private party in the construction of a bridge that was not used by the public, was not maintained by the city, and was not connected to any public streets.  *Id.*  Here, unlike in *Burton*, there is evidence in the record that the subdivision secured by the bonds allowed public access.  Specifically, the developers were required to allow for limited public use of the subdivision clubhouse.  Additionally, the developers were required to include easements sufficient for the Town to maintain and access all waterlines.  Based on this distinction, we do not find *Burton* controlling.

Here, the County entered into the bonds pursuant to section 153A-331, the same statute utilized by Polk County in *Derwort*. Section 153A-331 provides that counties are authorized to enact subdivision control ordinances for a variety of purposes consistent with their governmental police powers, such as: (1)

"provid[ing] for the orderly growth and development of the county"; (2) "creat[ing] conditions that substantially promote public health, safety, and the general welfare"; and (3) "provid[ing] for the more orderly development of subdivisions by requiring the construction of community service facilities in accordance with county plans, policies and standards." *Id.* The statute goes on to allow counties to enter into bonds like those at issue in this case "[t]o assure compliance with these and other ordinance requirements[.]" *Id.*

Because the enabling statute allowing for the creation of the bonds between defendants and the County explicitly states that such bonds exist to "assure compliance" with subdivision ordinance requirements, which this Court has characterized as "a duty owed to the general public, not a specific individual," *Derwort*, 129 N.C. App. at 792, 501 S.E.2d at 381, and the subdivision is open to the public, we conclude that plaintiffs are engaged in a governmental function by attempting to enforce the bonds against defendants. *See also State Art Museum Bldg. Comm'n v. Travelers Indem. Co.*, 111 N.C. App. 330, 335, 432 S.E.2d 419, 422 (1993) ("A court may [] consider whether or not the State's action is for the 'common good of all' and therefore governmental, or for pecuniary profit and therefore

proprietary."); *Sides v. Cabarrus Memorial Hospital, Inc.*, 287 N.C. 14, 23, 213 S.E.2d 297, 303 (1975) (noting that "governmental functions . . . are those historically performed by the government, and which are not ordinarily engaged in by private corporations."). Therefore, under the *Rowan* rulings, plaintiffs are not subject to the statutory time limitation in section 1-52.

Even assuming that the County and the Town were engaged in a proprietary function sufficient to trigger the three-year time limitation in section 1-52, we would still find that summary judgment for plaintiffs is proper. Defendants argue that this cause of action accrued before 25 October 2009, three years before the complaint was filed on 25 October 2012, because by that time plaintiffs knew or should have known that the construction work would not be completed within a reasonable time. We disagree. The bonds themselves do not specify any particular date by which time the construction needed to be completed. Although there is evidence that the Town was concerned in mid-2009 by the relative lack of progress on the construction, as late as 18 December 2009, a principal in the development companies stated that they were "committed to finishing [the] communities without need of the bonds." Indeed,

construction activity by the developers continued well into 2010. Therefore, because it is clear that the developers themselves had not yet given up on the project, we disagree with defendants' contention that there is a genuine issue of fact regarding whether plaintiffs knew or should have known prior to 25 October 2009 that the project would not be completed within a reasonable time.

## Conclusion

After careful review, we hold that the Town has standing to bring suit against defendants for breach of contract. Furthermore, plaintiffs are engaged in a governmental function and are exempt from the otherwise applicable statute of limitation. Therefore, we affirm the trial court's order granting summary judgment for plaintiffs.

AFFIRMED.

Chief Judge McGEE and Judge STEELMAN concur.